### ROCK ISLAND PLOW COMPANY v. E. O. PETERSON.[1]

December 2, 1904.

Nos. 13,989—(54).

**Foreign Corporation.**

Plaintiff, a corporation of the state of Illinois, engaged in the business of manufacturing and dealing in farm machinery in that and other states, maintained an agency in this state for the purpose of receiving, storing, and delivering goods to purchasers in this state, to whom sales were made by orders taken by traveling salesmen, subject to the approval of plaintiff at its home office, in the state of Illinois. The agent in this state had no authority to make sales of property stored with it, or to take or receive orders therefor. Its authority was limited exclusively to delivering goods previously sold by plaintiff through its traveling salesmen. It is *held* that plaintiff was not doing business within this state, in violation of chapter 69, p. 68, or chapter 70, p. 71, Laws 1899; that its business, transacted in the manner stated in the opinion, constituted interstate commerce.

[1] Reported in 101 N. W. 616.

Appeal by plaintiff from a judgment of the district court for Goodhue county, entered pursuant to the findings and order of Williston, J. Reversed and judgment ordered for plaintiff.

*John F. Merrill* and *Albert Johnson,* for appellant.

*S. J. Nelson,* for respondent.

BROWN, J.

Action to recover upon a promissory note, in which defendant had judgment, and plaintiff appealed therefrom.

The facts, as disclosed by the findings of the trial court, are as follows: Plaintiff is a corporation organized and existing under the laws of the state of Illinois, having its office and principal place of business at the city of Rock Island, in that state, and engaged in the business of manufacturing and selling agricultural implements. Defendant is a retail dealer in such articles, doing business at Red Wing, in the state of Minnesota. At the city of Red Wing on January 2, 1901, defendant delivered to a traveling salesman of plaintiff the following order:

> Please ship to us the following order for goods from F. O. B., Minneapolis, Minn., on or about March 15, 1901, or as soon as possible thereafter (or you may ship earlier at your option, provided time of payment is not thereby changed) marked E. O. Peterson Hdw. Co., Red Wing, Minn. * * *
>
> E. O. Peterson Hdw. Co.
>
> Accepted subject to approval of Rock Island Plow Company.
>
> P. Cain,
> Traveling Agent.

The order was by him forwarded to plaintiff at its place of business at Rock Island, and by it accepted, and notice of such acceptance was soon thereafter mailed to defendant. The goods ordered by defendant were subsequently shipped to him, but under the following circumstances: It appears that, long prior to the date of this transaction, plaintiff entered into a written contract with the Security Warehouse Company of Minneapolis, Minnesota, which contract was in force at the time of the transaction here in question, under which the ware-

house company undertook and agreed—to quote the language of the contract—

> To receive, store in good dry warehouses, and keep in good order, any goods and repairs manufactured and shipped to it by said second party [plaintiff]; said goods to be packed and bundled by said second party in the customary way for reshipment; all carload lots to be delivered on side tracks of the first party's warehouse.

And the warehouse company further agreed to transfer and reship goods promptly upon receipt of written orders from plaintiff, or its authorized representatives or agents, for the compensation therein specified.

The findings of the trial court do not justify the inference or conclusion that plaintiff shipped to and stored large quantities of its goods with the warehouse company, without reference to contracts previously entered into for their sale. If such facts appeared, a different question would be presented. On the contrary, the inference from the findings is that no goods were shipped to that company until orders were received from customers in this state, and they were then, before shipment, "packed and bundled by said second party in the customary way for reshipment," as required by the terms of the contract above quoted.

Some time after the receipt of the order from defendant, and its acceptance by plaintiff, the latter shipped to the warehouse company at Minneapolis the articles called for by the contract, and directed their reshipment to defendant at Red Wing. The warehouse company complied with the directions. The goods were reshipped from Minneapolis to Red Wing, and received by defendant, presumably "packed and bundled" as originally received by the warehouse company. It fairly appears that this was the general manner in which plaintiff did business with its customers in this state. We are bound, in the absence of specific findings to the contrary, to so assume, for no presumptions are to be indulged in against plaintiff. The burden was upon defendant to show affirmatively a violation of the statute.

An accounting and settlement was had between the parties subsequent to the shipment of the goods, and defendant made and delivered

to plaintiff the promissory note sued on in this action. The defense to the action is that plaintiff is a foreign corporation, and at no time has complied with the provisions of chapter 69, p. 68, or chapter 70, p. 71, Laws 1899, known as the "Somerville Law," prescribing certain conditions on which foreign corporations may do business in this state. The court below found, in accordance with the stipulation of the parties, that plaintiff had in no manner complied with the statutes referred to: and the question for consideration is whether the facts stated disclose that plaintiff was doing business in this state, within the meaning and in violation of the statute.

This statute was not intended to interfere with interstate commerce, for it is beyond the power of the legislature to enact laws prohibiting or restricting parties engaged in that sort of business, but was intended to apply exclusively to foreign corporations doing business within our borders, as distinguished from interstate commerce. The order under which the goods in question were shipped to defendant was taken by a traveling salesman, subject to the approval of plaintiff corporation at its home office, in the state of Illinois, where it was accepted. If the articles thus contracted for had been shipped to defendant direct from that state, there could be no question that it would be interstate commerce, and beyond the reach of the statute referred to. 13 Am. & Eng. Enc. (2d Ed.) 870. And we have only to inquire whether the formal execution of the contract by plaintiff, by a delivery of the goods ordered in the manner stated, deprived the transaction of the character of interstate commerce.

The delivery of the order and its acceptance at Rock Island closed the contract between the parties, and it was executed and performed by plaintiff when the articles ordered were delivered to the railway company at Minneapolis, consigned to defendant at Red Wing. But the mere fact that the performance was by a delivery of the goods to a carrier in this state, to be transported to defendant, did not necessarily render it any the less interstate commerce. The warehouse company in Minneapolis was the agent of plaintiff in this state for the purposes of performance only, clothed with the naked power and authority to deliver the goods, and to deliver to other customers goods stored with it when directed and ordered so to do. It was a mere distributing agency. The case would be substantially the same if the goods had

been consigned to plaintiff itself at Minneapolis, and by some other agent reshipped to defendant. It comes, it seems clear to us, squarely within the case of Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229.

That case involved substantially the question here presented. It appeared in that case that a portrait company carrying on business in one state had obtained orders through an agent in another state for pictures and frames, and, in filling the orders, shipped the pictures and frames in separate packages, for convenience in packing and handling, to its own agent in the state where the orders were obtained, who placed the pictures in their proper frames, and delivered them to the persons ordering them. The court held that the transaction came within the protection of the commerce clause of the federal constitution, and was not doing business in the foreign state in violation of a statute similar to our own.

In the case at bar, as we have already stated, the fair inference from the findings of the trial court is that plaintiff shipped its goods into this state, after receiving orders therefor from customers, to its agent, the warehouse company at Minneapolis, to be by it reshipped and delivered to customers, "packed and bundled" as originally received by it. The power of the warehouse company was limited to reshipping and delivering goods consigned to it for that purpose. It had no power to take orders or to sell or deliver goods, otherwise than as directed.

The case of G. Heileman Brewing Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441, relied upon by defendant, is not in point. In that case the brewing company was a corporation created and doing business under the laws of the state of Wisconsin, manufacturing beer for sale to customers in that and other states. It maintained a warehouse at Waterville, in this state, where large quantities of beer and liquors were stored and sold by an agent of the company resident at Waterville, but not, as in the case at bar, upon orders taken by traveling salesmen. In that case the agent had full power to sell and dispose of the liquors in his charge, and to receive payment therefor. The cases are clearly distinguishable.

Our conclusions are that the transaction here in question amounted to interstate commerce, and plaintiff is entitled to recover.

The judgment appealed from is reversed, with directions to the court below to amend its conclusions of law by ordering judgment for plaintiff as prayed for in the complaint.