# VICTOR TALKING MACHINE COMPANY v. LAURENCE H. LUCKER.[1]

January 15, 1915.

Nos. 18,833—(96).

**Foreign corporation — sales in Minnesota.**

1. A foreign corporation selling goods to purchasers within the state upon orders received from traveling salesmen or by mail, and which ships goods into the state only to fill such orders, is engaged in interstate commerce, and it is not within the prohibitions of G. S. 1913, §§ 6206–6208 relating to foreign corporations doing business in this state. Its transactions are not rendered local by the fact that it advertises its goods in this state, or by the fact that its traveling salesman turn in orders to local distributors to be filled by them, if the corporation disposes of its goods only by outright sales in the manner above described.

**Same — enforcement of interstate contract.**

2. Such foreign corporation does not lose its right to enforce its interstate contracts in our courts by subsequently engaging in local business without complying with our laws.

**Contract terminable at will.**

3. A contract by one party to sell goods to another as ordered, but for no fixed period, is terminable at will of either party, and no right to damage can be predicated on its termination.

**Lawful competition.**

4. Competition in trade is lawful. One man may seek the business of

[1] Reported in 150 N. W. 790.

---

Note.—On the question whether soliciting trade is doing business within the state, see notes 9 L.R.A.(N.S.) 1214 and 23 L.R.A.(N.S.) 834. And as to whether sale by foreign corporation of goods stored in state is intrastate business, see note in 18 L.R.A.(N.S.) 134.

For the validity of contracts made by foreign corporations which have not complied with statutory conditions of the right to do business in a state, see note in 24 L.R.A. 315. And upon the enforceability in Federal court, or court of another state, of a contract made by a foreign corporation which has not complied with the conditions of doing business within the state, see note in 26 L.R.A. (N.S.) 999.

competitor and may tell the trade not to buy of his competitor, so long as he indulges in no threat, coercion, misrepresentation, fraud or other harassing means.

Action in the district court for Hennepin county to recover $6,-582.88 for goods sold and delivered. The case was tried before Steele, J., who granted plaintiff's motion for judgment on the pleadings as to the counterclaim set up in defendant's answer, and a jury which returned a verdict in favor of defendant. Plaintiff's motion for judgment in its favor for the amount demanded, notwithstanding the verdict, was granted. From the judgment in favor of plaintiff for $7,441.96 and from the judgment on the pleadings so far as the counterclaim of defendant was concerned, defendant appealed. Affirmed.

*Henry Deutsch* and *Charles G. Laybourn,* for appellant.

*William W. Bartlett* and *Brooks & Jamison,* for respondent.

HALLAM, J.

Plaintiff sued for goods sold and delivered. The goods were sold and delivered and the price has not been paid. The defense is that plaintiff is a foreign corporation and that it was doing business in this state without having complied with its laws. A counterclaim is also pleaded alleging wrongful interference with defendant's business. The court gave judgment for plaintiff on the pleadings as to the counterclaim. The case was tried upon the complaint of plaintiff and the defense of defendant, and the court gave judgment for plaintiff notwithstanding the verdict of the jury for defendant.

Sections 6206, 6207, G. S. 1913, provide that every foreign corporation doing business in this state shall appoint an agent and maintain an office or place of business in the state, file with the secretary of state a copy of its charter and a statement of its business, and pay a fee into the state treasury. Section 6208 provides that "no corporation which shall fail to comply with the foregoing provisions shall maintain any suit or action   *   *   *   in any of the courts of this state." This plaintiff is a New Jersey corporation,

and it did not comply with the provisions of this statute. The question arises, is it thereby precluded from maintaining this action?

It may be conceded that defendant was doing business in this state. But not all business in the state is within the prohibitions of the statute. It is beyond the power of the legislature to enact laws prohibiting or restricting the transactions of interstate commerce, and it has been definitely held that this statute was not intended to apply to corporations engaged in such business, but only to foreign corporations doing local business within the borders of this state. Rock Island Plow Co. v. Peterson, 93 Minn. 356, 101 N. W. 616. See International Textbook Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. ed. 678, 27 L.R.A.(N.S.) 493, 18 Ann. Cas. 1103.

Plaintiff's method of doing business at the time this cause of action arose was as follows: It disposed of its goods through the medium of distributors or jobbers, and retail dealers. Plaintiff selected its distributors and made contracts with them, limiting the territory in which and the persons to whom they could sell, and the prices they should charge. Retail dealers were likewise obliged to enter into a contract with plaintiff containing somewhat similar limitations. Plaintiff publicly advertised its wares for the purpose of attracting consumers to buy of its dealers. It also employed traveling salesmen, who took orders for goods which were filled from New Jersey or were turned over to distributors in Minnesota and were filled by them. It had no store or warehouse or place of business in Minnesota, and shipped goods only to fill orders received by its New Jersey office by mail or through traveling salesmen. Its benefit from sales turned over to Minnesota distributors arose from the fact that the distributors or dealers who made or filled such sales or orders must in turn buy from it. The transactions between plaintiff and its distributors were out and out sales without condition.

This court has held in substance that where a foreign corporation, engaged in the manufacture of goods in another state, sells and delivers its goods on orders taken by traveling salesmen in this state, its business is interstate commerce. Rock Island Plow Co. v. Peterson, 93 Minn. 356, 101 N. W. 616; J. B. Inderrieden Co. v. J. C. Johnson Co. 112 Minn. 469, 128 N. W. 570; see also Caldwell v. North

Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. ed. 336; Swift & Co. v. United States, 196 U. S. 375, 398, 25 Sup. Ct. 276, 49 L. ed. 518; Rearick v. Pennsylvania, 203 U. S. 507, 512, 27 Sup. Ct. 159, 51 L. ed. 295; Dozier v. Alabama, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. ed. 965, 28 L.R.A.(N.S.) 264. The evidence in this case brings the business done by plaintiff, at the time this cause of action arose, within the interstate commerce rule. Some of the restrictions imposed upon its distributors and dealers, particularly those by which it limited the price at which they might sell, may have been void. Bauer & Cie v. O'Donnell, 229 U. S. 1, 16, 33 Sup. Ct. 616, 57 L. ed. 1041, 50 L.R.A.(N.S.) 1185. But this did not change the relation of the parties. Some of the provisions of its contracts may have been consistent with a contract of agency. (D. M. Osborne & Co. v. Josselyn, 92 Minn. 266, 99 N. W. 890) but, taking all of the transactions together, we think the relation of the parties was clearly that of vendor and vendee, and not of principal and agent. The fact that orders taken were turned in to a local dealer to be filled by him as a sale of his own goods, does not change the character of the commerce so long as all sales and deliveries made or contemplated by plaintiff were interstate transactions. Neither did the fact of advertising by plaintiff in this state for the purpose of creating a public demand for its products to be sold as aforesaid, in any sense render the transactions local. "Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation * * * is a transaction of interstate commerce." International Textbook Co. v. Pigg, 217 U. S. 91, 107, 30 Sup. Ct. 481, 485 (27 L.R.A.[N.S.] 493, 18 Ann. Cas. 1103) quoting Butler Bros. Shoe Co. v. U. S. Rubber Co. 156 Fed. 1, 17, 84 C. C. A. 167. The transactions in question were interstate commerce within this rule.

Defendant relies on Thomas Mnfg. Co. v. Knapp, 101 Minn. 432, 112 N. W. 989. But there the evidence showed that the corporation had large quantities of goods stored in the state from which sales and deliveries were made by its agents, and the proceeds of the sales

when made belonged to the corporation. These facts distinguish that case.

2. Defendant offered to prove that after the transactions between plaintiff and defendant, and after this action was brought, plaintiff adopted another form of contract, by the terms of which no machines or records were to be sold, either to distributors or dealers or to the public, but only licensed for a royalty. It is not so clear that this method of putting out goods constitutes an interstate commerce transaction. But this question we do not deem it necessary to decide. Even if plaintiff did subsequently engage in local business, its omission to comply with the law as to such local business does not render its previous interstate transactions either void or unenforceable in our courts. It has been strongly intimated, and apparently taken for granted, that our statute prohibits resort to our courts only in case of demands growing out of its illegal business. G. Heileman Brewing Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441. But whether or not the statute requires this construction, we are clear that it must not be construed as forbidding resort to our courts for the enforcement of any obligation arising out of interstate commerce, even though the corporation is transacting local business without compliance with our laws. Such a statute would be beyond the power of the state, for "any legislation of the state which seeks to prevent the enforcement of the contract is * * * an invasion of the exclusive right of congress" to regulate interstate commerce. "If the state cannot declare the contract void, it cannot prevent the enforcement of the contract." McNaughton v. McGirl, 20 Mont. 124, 135, 136, 49 Pac. 651, 655, 38 L.R.A. 367, 63 Am. St. 610. It was not necessary for the legislature to expressly except the enforcement of such contracts from the prohibition of the statute. The legislative intention will not be presumed to prohibit their enforcement. 5 Thompson, Corporations, § 6641. See also Attorney General v. Electric Storage Battery Co. 188 Mass. 239, 74 N. E. 467, 3 Ann. Cas. 631; State v. Creamery Package Mnfg. Co. 115 Minn. 207, 132 N. W. 268, Ann. Cas. 1912D, 820.

3. The counterclaim contains many allegations of alleged wrongs. We have carefully examined them all. Some of them do not require

special mention. We shall refer to two alleged grounds of recovery on which we understand defendant to mainly rely.

It alleges that the plaintiff terminated the contract between plaintiff and defendant, arbitrarily and without cause while defendant had a large stock of machines and records on hand, then refused to sell defendant any further machines or records, and that defendant as a result suffered damage. The contract is not set out in full. There is no allegation that it was for any particular time. It was accordingly terminable at will of either party and no right to damages can be predicated on its termination. 35 Cyc. 118; Irish v. Dean, 39 Wis. 562; Stonega Coal Co. v. L. & N. R. Co. 106 Va. 223, 55 S. E. 551, 9 L.R.A.(N.S.) 1184; Willcox & Gibbs Sewing Mach. Co. v. Ewing, 12 Sup. Ct. 94, 35 L. ed. 882, 141 U. S. 627; Newhall v. Journal Printing Co. 105 Minn. 44, 117 N. W. 228, 20 L.R.A.(N.S.) 899. The case is quite different from St. Barnabas Hospital v. Minneapolis Int. Ele. Co. 68 Minn. 254, 70 N. W. 1126, 40 L.R.A. 388, where the contract was to care for a sick person at a hospital, and it was held that such a contract could not be terminated while the person so cared for could not be removed. The facts of that case are exceptional and its rule cannot be generally applied.

4. The only other allegation of the counterclaim requiring special mention is the following:

That plaintiff at the time of the termination of its contract "had in its possession a full and complete list of the retailers or dealers to whom defendant had been selling plaintiff's talking machines and records, and that * * * plaintiff for the purpose of * * * destroying and ruining defendant's business, notified each of said retailers and dealers with whom defendant had been doing business that defendant was no longer a jobber or distributor of its goods and that they must thereafter purchase Victor talking machines and records from jobbers or distributors other than defendant;" that defendant had on hand a large stock of machines and records of plaintiff's manufacture; that but for plaintiff's acts he could have disposed of them at a profit, but that by reason of plaintiff's acts he will be obliged to dispose of them at a loss.

This claim is founded, not on the contract, but in tort. The liability of a party for interference with the contracts or the business of another, is a subject upon which courts have manifested some diversity of opinion. This is not a case of interference with an existing contract, as in Faunce v. Searles, 122 Minn. 343, 142 N. W. 816. It is a case of interference with defendant's business which prevented his making sales he otherwise would have made. "To justify an act of interference of this sort, it must be founded upon some lawful object." Joyce v. Great Northern Ry. Co. 100 Minn. 225, 233, 110 N. W. 975, 979, 8 L.R.A.(N.S.) 756. One man having no legitimate interest to subserve, may not lawfully ruin the business of another by maliciously or wantonly inducing his patrons and third persons not to deal with him. Ertz v. Produce Exchange of Minneapolis, 79 Minn. 140, 145, 81 N. W. 737. But a man has a legitimate interest in the advancement of his own business interests. Competition in trade is lawful. It is well settled that "everyone has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition. * * * If disturbance or loss come as a result of competition" he has no right to complain "unless some superior right by contract or otherwise is interfered with." Walker v. Cronin, 107 Mass. 555, 564. These rules are substantially approved in Joyce v. Great Northern Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A.(N.S.) 756; Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L.R.A.(N.S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807; Scott-Stafford Opera House Co. v. Minneapolis Musicians Assn. 118 Minn. 410, 136 N. W. 1092; see also 1 Cyc. 650; 38 Id. 503. In this case defendant had for sale goods of plaintiff's manufacture. Plaintiff had the same class of goods for sale. In this sense they were competitors. Defendant had the right to sell to anyone he chose, among others, to the licensed dealers of plaintiff. No contract or other obligation prevented his selling to them or prevented their buying from him. In this situation, plaintiff notified these dealers that defendant was no longer a jobber or distributor of its goods. This was true, and no action can be predicated on such a statement. It also told them that they must thereafter buy Victor

128 M.—12.

machines and records from jobbers or distributors other than defendant. This was a direction which the dealers had the right to follow or not, as they pleased. There is no allegation that plaintiff used or attempted any sort of coercion. There is no charge of misrepresentation, as in Virtue v. Creamery Package Mnfg. Co. 123 Minn. 17, 142 N. W. 930, 1136. This was a notice by one competitor telling buyers not to do business with another. Such conduct, without more, is not actionable. One man may lawfully seek the business of a competitor and may tell the "trade" not to buy of his competitor, so long as he indulges in no threat, coercion, misrepresentation, fraud or other harrassing methods. The court properly held that the allegations of the answer were not sufficient to constitute a counterclaim.

Judgments affirmed.