AMERICAN BRICK & TILE COMPANY v. CHARLES TURNELL AND OTHERS.

EQUITABLE SURETY COMPANY, APPELLANT.[1]

June 20, 1919.

No. 21,218.

**Commerce — action by foreign corporation.**

1. A foreign corporation, not licensed to do business in this state may maintain an action in the courts of this state to enforce payment for goods sold in interstate commerce to residents of this state.

**Same — sale of goods delivered in Minnesota.**

2. A sale of tile to be shipped from Illinois and Iowa, and delivered on board cars in Minnesota, was a transaction in interstate commerce.

**Same — finding sustained by evidence.**

3. Plaintiff manufactured tile in Iowa and shipped it to purchasers in Minnesota. The finding of the trial court that plaintiff's transactions were transactions in interstate commerce, and that none of them constituted the doing of business in Minnesota in violation of the statutes of Minnesota, is not overcome by the fact that plaintiff made bids and contracts in Minnesota for furnishing tile for county and judicial ditches and had representatives in Minnesota soliciting such contracts, nor by the fact that plaintiff as a matter of accommodation furnished a contractor with a certified check to file with his bid for constructing a ditch, nor by the fact that plaintiff procured an assignment of money due or to become due under a ditching contract as security for the unpaid purchase price of tile sold the contractor.

**Performance of contract — finding sustained.**

4. The finding that plaintiff had performed its contract in all respects is sustained by the evidence.

**Evidence insufficient.**

5. The evidence fails to show that plaintiff received either pay or credit on another contract for tile furnished for the ditch in question and diverted to another ditch without plaintiff's knowledge or consent.

**Amendment at close of trial.**

6. A proposed amendment to the answer offered after the evidence had

[1]Reported in 173 N. W. 175.

been completed and which failed to state a valid defense was properly disallowed.

**Liability of surety company.**

7. The obligations of a surety engaged in the business of writing bonds for profit are governed by the laws governing insurance contracts.

**Surety not released by default of principal.**

8. The price of the tile furnished by plaintiff was payable in instalments. Defendant, having executed a bond conditioned that the contractor should pay all just claims for material as they became due, is not released from liability thereon by the fact that plaintiff continued to furnish tile as required by its contract after the contractor had defaulted in his payments.

Action in the district court for Martin county to recover $59,555.03 upon a contractor's bond. The case was tried before Callaghan, J., acting for the judge of the Seventeenth judicial district, who at the close of the testimony denied the motion of defendant Equitable Surety Company to amend its answer, made findings and ordered judgment in favor of plaintiff for $54,121.36, and interest, and for other sums in favor of two defendants. A motion of the defendant surety company to amend the findings was granted in part and denied in part. Its motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant surety company appealed. Affirmed.

*Kerr, Fowler, Schmitt & Furber,* for appellant.

*H. C. Carlson* and *H. H. Dunn,* for respondent.

TAYLOR, C.

On September 18, 1911, defendant Turnell entered into a contract with the counties of Martin and Faribault to construct the tile portion of Judicial Ditch No. 14 in those counties for the sum of $161,943. On the same date Turnell, as principal, and defendant Equitable Surety Company as surety, executed the bond required by statute to secure the faithful performance of the contract and the payment of all just claims incurred for labor and material in performing it. Turnell proceeded with the construction of the ditch until January, 1914, when he became financially embarrassed and abandoned the contract. The surety company took over the work and proceeded to complete it. In March, 1915,

plaintiff brought this action to recover pay for tile furnished Turnell before he abandoned the work. The court made extended findings of fact and on October 5, 1918, rendered judgment in favor of plaintiff and against defendants Turnell and the surety company, for the sum of $69,516.21. The only appeal is by the surety company which will be designated as the defendant hereafter.

1. Defendant asserts that:

"Plaintiff is not entitled to maintain this action because the transactions involved constitute the doing of business in the state of Minnesota by a foreign corporation in violation of state law."

Plaintiff is an Iowa corporation engaged in the manufacture of drain tile at Mason City in that state, has never complied with the laws of this state relating to foreign corporations, and is not licensed to do business in this state. But, if the transactions in question were transactions solely in interstate commerce, plaintiff has the right to maintain its action and enforce payment for its goods sold in such commerce, although not entitled to do intrastate business in this state. Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790, and cases cited therein. Fisher v. Wellworth Mills Co. 133 Minn. 240, 158 N. W. 239, and cases cited therein. Defendant concedes that, if plaintiff confined its business in Minnesota within the domain of interstate commerce, it can maintain this action, but contends that plaintiff engaged in transactions which were not in interstate commerce and which bring the case within the doctrine of Palm Vacuum Cleaner Co. v. Bjornstad, 136 Minn. 38, 161 N. W. 215, L.R.A. 1917C, 102, and similar cases. It is undisputed that plaintiff contracted to furnish a specified quantity of tile of specified sizes to Turnell for the sum of $70,000 to be delivered as ordered by him; that plaintiff was to procure a part of the tile at Streator, Illinois, and was to manufacture the remainder at Mason City, Iowa, and was to deliver it to Turnell f. o. b. cars at designated points in Minnesota, and that under and pursuant to this contract plaintiff shipped the tile in controversy from Streator and Mason City and delivered it to Turnell on board cars at the designated points in Minnesota. That these transactions were within the domain of interstate commerce is too clear to require argument. The transactions on

which defendant relies to support its contention that plaintiff had been doing intrastate business in Minnesota are the following:

A. When Turnell filed the bid on which he secured the contract for Judicial Ditch No. 14, he procured from plaintiff the certified check which he was required to file with his bid. The trial court found as a fact that this transaction "was in no way connected or in consideration of the sale of said tile to said Charles Turnell or the making of the contract between the said Charles Turnell and the said plaintiff for the sale thereof." The evidence concerning this transaction is meagre, and simply shows that plaintiff furnished the check as an accommodation to Turnell and received it back when the contract was executed. There is nothing to show that plaintiff expected or received any consideration for furnishing it, but, even if plaintiff furnished it in the expectation of securing the contract to furnish the tile if Turnell secured the contract to construct the ditch, we think plaintiff's act was not of such a character that it changed the contract for the sale and delivery of the tile from an interstate to an intrastate transaction. All that plaintiff did or contracted to do in respect to the tile was to deliver it on board cars in Minnesota. Plaintiff had no part in incorporating the tile into the general mass of property in the state.

B. Defendant contends that the contract for the sale of the tile was made in Minnesota and that this fact brings plaintiff within the provisions of the Minnesota statute. Whether the contract was made in one state or another has little or no weight in determining whether the transaction was in fact a transaction in interstate commerce. Whether it was such a transaction is to be determined from the provisions of the contract and from what was done or required to be done in performing it.

C. Plaintiff submitted three several bids to Lyon county to furnish tile for ditches to be constructed in that county, and filed with such bids the certified checks required by statute. These bids had no connection with the ditch or contract in controversy, but, passing this point, they were merely offers to sell tile to be delivered in interstate commerce.

D. Plaintiff had representatives in Minnesota, soliciting contracts to furnish tile for ditches to be constructed in Minnesota. No claim is made that plaintiff manufactured tile in Minnesota or kept it in Minne-

sota for sale. Plaintiff merely sought to find buyers in Minnesota for tile manufactured in Iowa, and which, in case of a sale, it undertook to ship from its Iowa factory to the place of delivery designated by the buyer.

E. On October 15, 1913, plaintiff took an assignment from Turnell of all moneys due or to become due to him for the construction of Judicial Ditch No. 14, and also of all moneys due or to become due to him for the construction of another ditch designated as Judicial Ditch No. 7. At this time Turnell owed plaintiff a large amount for tile delivered under the contract in controversy, and plaintiff clearly had the right as a part of its interstate business to collect or secure the payments then past due. It appears however that plaintiff never realized anything from this assignment.

The trial court found as a fact that all the transactions between plaintiff and Turnell were transactions in interstate commerce, and that none of them constituted the doing of business in Minnesota contrary to the statutes of Minnesota, and we are of opinion that this conclusion is amply supported both by the evidence and by the authorities. York Mnfg. Co. v. Colley, 247 U. S. 21, 38 Sup. Ct. 430, 62 L. ed. 963; Buck Stove & Range Co. v. Vickers, 226 U. S. 205, 33 Sup. Ct. 41, 57 L. ed. 189: Dozier v. Alabama, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. ed. 965, 28 L. R.A.(N.S.) 264; Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. ed. 295; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. ed. 49; Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790; Fisher v. Wellworth Mills Co. 133 Minn. 240, 158 N. W. 239. Cases holding that a foreign corporation has brought itself within the jurisdiction of the courts of a state by doing business in the state are not in point, as transactions in interstate commerce are sufficient to give jurisdiction in such cases. International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. ed. 479.

2. Defendant claims that plaintiff delayed the work by failing to deliver the large tile as needed, and also that plaintiff furnished a quantity of defective tile which Turnell laid and then had to take up and replace, and that Turnell is entitled to damages for these defaults which should be offset against the amount due plaintiff. The trial court found as a fact that plaintiff had performed all its undertakings and had not

been in default in any respect, and that defendant's allegations concern - ing these matters were untrue. As we find sufficient evidence to support these findings, defendant's claim cannot be sustained.

3. The court found that all the tile in controversy was furnished by plaintiff for use in constructing Judicial Ditch No. 14, but that Turnell, in violation of his agreement and without the knowledge or consent of plaintiff, diverted a quantity of this tile of the value of $763.28 from Ditch No. 14 and used it in Ditch No. 7 which he was also constructing at the same time. Turnell had taken the contract to construct Ditch No. 7 and had given a bond to secure the performance of that contract with the American Surety Company as surety. He failed to complete the contract. Defendant contends that plaintiff has received the benefit of the value of the tile diverted from Ditch No. 14 to Ditch No. 7, for the reason that plaintiff had agreed to hold the American Surety Company harmless from any liability on its bond. We fail to find any assignment of error presenting the question sought to be raised, or any evidence which would justify a finding that plaintiff had received either pay or credit for this tile in that transaction.

4. The contract between Turnell and the counties provided for a payment at the end of each month of 75 per cent of the value of the work completed during that month. The contract between Turnell and the plaintiff provided that whenever Turnell received a payment from the counties he should make a payment to plaintiff which should "bear the same ratio to the entire purchase price of said tile" that the payment received by him bore "to the whole contract price for the construction of said ditch," that these payments should be made at the office of plaintiff at Mason City, Iowa, and that any sums not paid when due "shall bear interest at the rate of seven per cent per annum thereafter until paid." The counties made the stipulated payments to Turnell as the work progressed. Defendant alleged in its answer that out of the amounts so received Turnell made payments to plaintiff aggregating more than $25,000, that plaintiff wrongfully applied these payments on an indebtedness due from Turnell for material furnished for Ditch No. 7, and that defendant is entitled to have these payments applied on the claim now in controversy. Defendant tried the case on this theory and sought to establish the facts so alleged. Both parties presented their evidence,

which is quite voluminous, and rested. Some four months later they appeared before the court and argued and submitted the cause. At the argument additional exhibits were received in evidence by stipulation, among which were the checks, with the indorsements thereon, by which the county treasurers had paid the warrants issued to Turnell for the work performed on Ditch No. 14.

Defendant itself procured and presented these checks, and states in its brief:

"It was after this was done and at this time that it for the first time conclusively appeared from the record that the contractor had made no payments to the respondent for the tile involved in this suit."

Thereupon defendant abandoned its contention that plaintiff had received the payments alleged, and changing front insisted that defendant had been released from liability by plaintiff's failure to collect the payments provided for in plaintiff's contract as they became due. On plaintiff's objection that this defense had not been alleged and was not consistent with the allegations of the answer, defendant asked leave to amend the answer by adding thereto a paragraph, alleging that plaintiff had negligently failed to collect these payments and thereby had released defendant from liability under the bond. This application was denied on plaintiff's objection that the proposed amendment raised an entirely new issue which plaintiff was not then prepared to meet, that it was inconsistent with the answer and with the theory on which the case had been tried, and that it stated no defense.

Defendant contends that the court erred in this ruling, and that plaintiff, having failed to collect any of the payments due from Turnell, discharged defendant from liability on the bond by continuing to deliver tile under the contract after Turnell was in default. The refusal of the court to allow the amendment at the time and under the circumstances here disclosed was not error. 2 Dunnell, Minn. Dig. § 7708, and same section in the 1916 supplement. But, passing this, neither the facts sought to be alleged nor the facts shown by the evidence are sufficient to release defendant from liability. Defendant is engaged in the business of writing surety bonds for profit, and is regarded by the courts as an insurer to whom the strict rules adopted for the protection of accommodation sureties do not apply. George A. Hormel & Co. v. American

Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L.R.A.(N.S.) 513; National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55; Standard Salt & Cement Co. v. National Surety Co. 134 Minn. 121, 158 N. W. 802; Pearson v. United States Fidelity & Guaranty Co. 138 Minn. 240, 164 N. W. 919. Such bonds, like other insurance contracts, are construed most strongly against the insurer, to the end that the insured may secure the indemnity contemplated by the parties when making the contract, and in the absence of a stipulation to that effect are not avoided by unauthorized acts of omission or commission on the part of the beneficiary, unless it be shown that such acts increased the liability of the surety. Philadelphia v. Fidelity & Deposit Co. 231 Pa. St. 208, 80 Atl. 62, and cases cited in note appended to report of this case in Ann. Cas. 1912B, 1085. Even a valid extension of time granted to the principal will not discharge such a surety, unless it be shown to have resulted in substantial prejudice to the surety. Standard Salt & Cement Co. v. National Surety Co. 134 Minn. 121, 158 N. W. 802, and cases cited therein.

Defendant concedes that plaintiff granted no extension of time, but on the contrary demanded the payments. Defendant predicates its present contention on the proposition that "it was the absolute duty of the respondent to collect its proportionate share of the estimates received by Turnell as he received them."

The contract provided that Turnell should make the payments at plaintiff's office, and further provided that instalments not paid when due should bear interest until paid, showing that the parties had in mind that such payments might not be made at the time fixed therefor. There is no provision in the contract imposing any duty on plaintiff to take affirmative action to collect these payments. It was the duty of Turnell to make them. The bond executed by defendant is conditioned that Turnell "shall pay as they become due all just claims for work and labor performed and skill and material furnished." By its bond defendant insured the making of these payments as they became due, and cannot shift the burden which it assumed from its own shoulders to those of plaintiff. Furthermore, the proposed amendment failed to allege that defendant had suffered any loss by plaintiff's delay in collecting the pay for its tile, and the evidence does not go far enough to establish any loss on that account, even if the question were properly before the court.

Defendant relies on American Bonding Co. v. United States, 233 Fed. 364, 147 C. C. A. 300, but the facts do not bring the instant case within the doctrine of that case.

We find no other questions requiring special mention.

Judgment affirmed.

QUINN, J., took no part.