## BOARD OF TRADE LIVERY COMPANY v. GEORGIA CASUALTY COMPANY.[1]

### November 7, 1924.

### No. 24,174.

**Jitney ordinance of Duluth does not restrict effect of liability policy.**

1. The so-called "jitney ordinance" of Duluth requires all licensees to be covered by a certain measure of liability insurance for the benefit of the public. The ordinance is not restrictive and does not limit the effect of a policy procured in compliance therewith, particularly where the policy is so clear as to prevent resort to extraneous aids to construction.

**Public liability insurance policy construed as contract of insurance.**

2. A public liability insurance policy against loss arising from claims for injuries to person or property is not governed by the law of suretyship, but is to be construed and applied as a contract of insurance.

**Defendant liable to plaintiff for judgments for injuries sustained by its passengers.**

3. Certain passengers of a navigation company held an excursion ticket entitling them to an automobile ride in Duluth. The ride was taken in an automobile belonging to plaintiff, and pursuant to a contract between it and the navigation company. The passengers were injured by reason of an accident to the automobile. They recovered damages from the navigation company as for a breach of its contract for their safe carriage. The navigation company subsequently recovered the amount of those judgments from plaintiff. *Held* that the defendant is liable for the amount of such judgments to plaintiff, under a policy of insurance issued by defendant and protecting plaintiff against "loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered."

[1]Reported in 200 N. W. 633.

Action in the district court for St. Louis county. From an order overruling its demurrer to the amended complaint, Grannis, J., who certified that the question raised was important and doubtful, defendant appealed. Affirmed.

*Warner E. Whipple*, for appellant.

*Washburn, Bailey & Mitchell* and *M. E. Louisell*, for respondent.

STONE, J.

Appeal, on a certificate that the questions involved are important and doubtful, from an order overruling a demurrer to a complaint which tells this story: Plaintiff operates a line of automobiles for hire in Duluth, under a license issued by the city, pursuant to a so-called "jitney ordinance" which requires all licensees to carry public liability insurance. With that requirement plaintiff has complied and at the times now in question was protected, within certain limits, by a public liability policy issued by defendant, the material terms of which are hereinafter stated and considered.

During August, 1917, the Northern Navigation Company, which operates a line of passenger steamships between Duluth and other lake ports, landed certain passengers in Duluth. Those now in question will be called the Thurstons. They held excursion tickets issued by the navigation company which entitled them to an automobile ride over Duluth's justly-famed boulevard. The automobile trip was covered by a coupon which was a part of the ticket purchased from the navigation company. The automobile service at Duluth was rendered by plaintiff under contract with the navigation company. While the Thurstons were taking the drive in one of plaintiff's automobiles, an accident occurred resulting in serious personal injuries to them.

The Thurstons resided at Detroit, Michigan, and there they prosecuted to a successful conclusion suits for damages against the navigation company, which was held liable for a breach of its contract for the safe carriage of its passengers. (See Thurston v. Northern Navigation Co. 205 Mich. 278, 171 N. W. 423.) The judgments procured were paid, and thereafter, when plaintiff sued the navigation company in St. Louis county for an admitted balance of account, the

latter, on a counterclaim, recovered from plaintiff the amount of the Thurston judgments. Those judgments included not only the damages suffered by the Thurstons, but also the taxable costs and disbursements of the litigation. Defendant was given timely and formal notice of the commencement both of the Thurston cases in Michigan, and the action of the plaintiff against the navigation company in St. Louis county, and was invited to assume the defense.

The complaint sets forth the contract of insurance issued by defendant to plaintiff, and thereon is predicated the demand for judgment in favor of plaintiff for the amount for which it has been held liable to the navigation company on account of the Thurston judgments. The sole question is whether the loss sustained is a damage insured against by the policy.

The issuance of such contracts of insurance is a principal portion of the business for which defendant was organized, and for which it is licensed to do business as a foreign corporation in Minnesota. By this policy plaintiff was indemnified "against loss arising or resulting from claims · upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered, while this policy is in force, including death resulting at any time therefrom, by any person or persons, not employed by the assured, by reason of the ownership, maintenance or use of any of the automobiles" covered by the policy.

There were the usual "exceptions," one of which was any "liability of others assumed by the assured under any contract or agreement, oral or written." The policy provided that no action should be brought against defendant unless to enforce payment by the company (defendant) "of a final judgment rendered after a trial in a suit against the assured for damages."

1. We consider, first, the argument for appellant that the ordinance which required the insurance in question should be taken as so limiting the effect of that insurance that there can be no recovery in the present case, because plaintiff's loss arose from paying the amount of the Thurston judgments to the navigation company instead of to the Thurstons themselves. It seems clear that the

Thurstons might have sued plaintiff and recovered judgments against it as they did against the navigation company, and that had they done so defendant would now be liable. Notwithstanding, it is argued that inasmuch as plaintiff did not respond directly to the Thurstons, but instead made payment to the navigation company, the insurance has ceased to apply and plaintiff has no recourse against defendant.

The argument demands resort to the ordinance in construing the policy. It assumes necessarily the premise that there is an ambiguity in the policy which must be removed by construction, and that the ordinance is the first thing to which resort must be had for interpretative aid. The argument of course falls if its necessary premise is unfounded, and the policy itself so clear as to prevent resort to extraneous aids in its application. As will later appear, that is our view, but for the time being we will, with counsel for defendant, assume the contrary, and upon that assumption proceed to an examination of the argument based upon the supposed restrictive effect of the ordinance.

Has the so-called "jitney ordinance" any restrictive effect upon all insurance policies issued to public automobile owners in compliance therewith? It provides that the insurance shall cover "each auto car carrying passengers" and all injuries thereby caused to person or property; that it shall be in such form that "an action may be brought thereon * * * by any person injured, in person or property, by reason of any act of the owner, driver, chauffeur, manager or other person in such operation of said vehicle; or by the representative of any person killed by such act." It is this portion of the ordinance that is urged upon us to prevent a recovery by any one other than a person actually injured in person or property.

We find nothing in the ordinance permitting us so to construe and apply it. What it does is not to require a maximum but a minimum of protection for the public. There is not a word indicating that owners of automobiles for hire cannot procure as much insurance protection as they desire, in addition to the minimum required by the ordinance. We would not be disposed to look very

far in a municipal by-law for a requirement so unreasonable. And if one were found, there would remain the question of the competency of municipal legislation so to restrict the right of contract. But in this case no such restriction was intended.

There is a similarity between a contract such as this, and the bond of a public contractor, and there is no doubt that where a bond of the latter class is given pursuant to a statute "it must be construed in the light of the statute, and extended, as well as limited in its scope." Combs v. Jackson, 69 Minn. 336, 72 N. W. 565. But even there it was recognized very explicitly that the statute cannot be resorted to if "violence would be done to the language of the bond" by such a course. See also Fay v. Bankers Surety Co. 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688.

The contract under consideration is different from an official bond. Both are express contracts. But there is nothing here requiring a holding that the ordinance is a part of the contract. It simply requires a contract of the kind in question. It does not by that fact become a restrictive part of the contract. Official bonds are different, for there frequently the "contract consists of the statutory bond, and the statute law relating to the office." County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181. In the case of a statutory bond the argument frequently is permissible that the obligation of the surety is "coincident with the obligations imposed by the statute." Downs v. American Surety Co. 132 Minn. 201, 156 N. W. 5, where again it was recognized that there must be no "violence to the language of the bond."

Here, as already observed, the purpose of the ordinance was to exact a minimum of insurance protection for the public, but not to limit the extent to which the owners of licensed vehicles might go in protecting themselves against public liability of all sorts. Even though resort to the ordinance were necessary, we consider that the use of it, urged upon us by counsel for appellant, would result in "doing violence to the language of the bond," and cause such a distortion of it that its expressed purpose of insurance would be wholly frustrated so far as the Thurston claims are concerned.

2. We next go to the policy itself, the controlling provision of

which has already been quoted. The contract itself is labeled "Automobile Liability Policy" and on its face appears to have been issued from the "Liability Department" of defendant. It indemnifies plaintiff, not against any particular variety of lawsuit, but *"against loss arising or resulting from claims* upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered while this policy is in force." It is too late now to attempt with much prospect of success to indulge, in favor of the insurer under such a contract, the judicial tenderness formerly evinced on behalf of sureties, many of whom assumed their obligations as a matter of personal accommodation and without compensation. Contracts of the kind before us are to be considered as insurance contracts and interpreted as such rather than as the undertakings of sureties. American Brick & Tile Co. v. Turnell, 143 Minn. 96, 173 N. W. 175, and cases cited.

Applying that rule, we find no occasion to resort to the ordinance for aid in the interpretation of the policy upon which defendant is sued. Certainly there is no reason for using that ordinance as a means of reducing the liability assumed by the policy and paid for by the stipulated premium.

3. Going now to the controlling question in the case, it must be resolved against defendant for the simple reason that what it insured plaintiff against was not, in the last analysis, judgments for damages or claims of any kind, but *"loss* arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered." Liability depends, therefore, not on the manner in which claims are enforced, as being indirect rather than direct, but upon the agency of causation, i. e., *claims* "for damage on account of bodily injuries." The amount required to reimburse the Northern Navigation Company for the Thurston judgments is so clearly a *loss* of the kind insured against, that it ought not to require argument to demonstrate that it is within the policy coverage. If the claim had been enforced by the Thurstons against plaintiff directly, there would have been no suggestion by defendant that it was not liable. It would have assumed the defense against those claims or would

have settled them. That is the ordinary and inescapable course in such cases.

The fact that the same claims now come through the medium of the navigation company, against which they were first asserted, certainly cannot change their character. That the navigation company happened to be liable to the Thurstons does not alter the case. The merits of the case are not thereby changed so as to permit defendant's escape from a liability clearly assumed by its contract. However or by whomsoever the claims were finally brought home to the plaintiff so that it had to respond in money, they were still a "loss" assured against by the policy in question. Defendant cannot escape liability because of the devious and unusual route followed in the final enforcement of the claims against plaintiff. This conclusion is fortified by the language of condition "D" of the policy, which imposes upon defendant the express obligation to discharge all final judgments against the assured (plaintiff) "on account of accidents covered by this policy."

The exception from defendant's contract responsibility of "liability of others assumed by the assured under any contract or agreement" cannot be allowed to relieve defendant from its obligation to insure plaintiff against loss arising from its own liability for personal injuries suffered by its passengers. That is the kind of liability to which plaintiff has been compelled to respond. In reimbursing the navigation company for its outlay on account of the Thurston judgments, plaintiff was making good its own liability and its own wrong and not a primary liability or wrong of the navigation company, a conclusion the correctness of which is not altered by the circumstance that the Thurstons in the first instance were able to collect from the navigation company. Notwithstanding that fact, the initial wrong, giving rise to the cause of action and the resulting "loss," was the act of the plaintiff, and the resulting liability was its liability and one of those, loss from which was clearly insured against by defendant.

The case is analogous to those where one of two joint tort feasors may compel indemnity from the other. That is allowed notwithstanding a joint original liability, where, as between themselves,

only one is at fault, and his wrongful act or omission is a breach of a duty owed to the other, and the primary cause of the injury. A typical case is Fidelity & Casualty Co. v. N. W. Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800.

The order appealed from must be and is affirmed.