## JACOB SCHMIDT BREWING CO. v. MINOT BEVERAGE CO.

### Civ. No. 1945.

United States District Court
D. North Dakota.
Northwestern Division.

Sept. 22, 1950.

Richard McGee and McGee & McGee, all of Minot, N. D., James H. Geraghty, Lipschultz, Altman and Geraghty, St. Paul, Minn., for plaintiff.

B. H. Bradford, Minot, N. D., for defendant.

VOGEL, District Judge.

Plaintiff is a Minnesota corporation engaged in the manufacture and sale of beer and is authorized to transact business in the State of North Dakota. Defendant is a North Dakota corporation engaged in the business of beverage distribution, including various kinds of beers, soft drinks and liquors. The amount in-

1. 242 N.Y. 413, 417, 152 N.E. 246, 247.

volved is in excess of $3,000.00. This Court has jurisdiction.

The original suit is on an account for goods sold and delivered by plaintiff to the defendant. By way of answer, the defendant has served a general denial of plaintiff's claim and has set up a counterclaim against the plaintiff. The counterclaim, in substance, alleges that in 1933 the plaintiff and the defendant entered into a contract, whereby the plaintiff employed the defendant as a distributor of beer in the Minot, North Dakota, territory for so long as the defendant should continue to faithfully and by proper and reasonable business methods use its best efforts and skill in the sale of plaintiff's beer. The counterclaim alleges that the plaintiff notified the defendant in writing of its election to cancel the contract and agreement between the two parties and that such cancellation or breach of contract was without just cause or excuse, and that "by reason of plaintiff's refusal to continue its contract in accordance with the terms thereof", the defendant has been damaged in the sum of $75,000.-00.

The plaintiff has now made a motion for summary judgment, such motion being based upon the pleadings, the deposition of L. C. Stearns, president of the defendant corporation, the affidavit of Edward M. Ryan, country sales manager for the plaintiff, and all of the files, records and proceedings herein. The motion, which is made under Rule 56 of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A., must be granted if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Such pleadings, etc., disclose that at the time of the commencement of this action, the defendant was indebted to the plaintiff on an open account for goods sold and delivered for the sum of $7,382.-35; that subsequent to the commencement of the action the defendant returned to the plaintiff certain merchandise valued at the sum of $2,403.04, so that on the open account defendant is indebted to the plaintiff in the sum of $4,979.31.

As to the defendant's counterclaim against the plaintiff for breach of contract, the facts established appear as follows:

In 1933, L. C. Stearns entered into an oral agreement with the plaintiff for the distribution of the plaintiff's products in the "Minot trade territory". The products of the plaintiff were to be shipped to the defendant on the defendant's order. Defendant's only remuneration was to be derived from a profit on the resale of the plaintiff's products to retail dealers in the Minot territory. No written agreement between the parties was ever made. The agreement covered no particular length of time excepting that it is alleged that it "should continue and be in force so long as the defendant should continue to faithfully and by proper and reasonable business methods, use its best efforts and skill in the sale and delivery of the products manufactured by the plaintiff in the territory assigned to the defendant and covering the period of the corporate existence of the plaintiff." It had no provisions with reference to sale price of plaintiff's products and no provisions with reference to the amount of plaintiff's products which the defendant could or would have to purchase for resale. In 1935, the business of L. C. Stearns was incorporated under the name "Minot Beverage Company" and L. C. Stearns became president of such corporation. No new agreement, written or otherwise, was entered into between the parties at the time of or subsequent to the incorporation of the defendant, but the parties continued their business relationships in the same manner as they had existed prior to the incorporation. During the period covered by the oral agreement between the plaintiff and L. C. Stearns and the business relationship between the plaintiff and the Minot Beverage Company, the defendant handled and distributed beer, soft drinks and alcoholic beverages manufactured and sold by parties other than the plaintiff herein.

The plaintiff now predicates its right to a summary judgment upon the ground that the alleged agreement between the plaintiff and the defendant lacks mutuality so as to render it unenforceable for cancellation or breach and that it is so indefinite as to be incapable of construction or enforcement and was nothing more or less than an agreement by plaintiff to sell goods to the defendant which the defendant could resell. Plaintiff makes the further point that even if the contract or agreement was valid and enforceable, a breach thereof by the plaintiff would not give a right to the defendant corporation to sue for damages because the alleged agreement was between L. C. Stearns, an individual, and the plaintiff and there was no approved assignment to the defendant corporation.

The record discloses, and it is frankly conceded by counsel for the defendant, that whatever agreement existed between the parties to this action could have been terminated by the defendant at any time it so desired. Defendant's counsel would avoid the effect of such conceded right to terminate the agreement by directing attention to the fact that the Minot Beverage Company's self-interest to protect its investment in building up sale of the plaintiff's products would operate against an exercise of that right to terminate. He claims that this was a contract or agency coupled with a power or interest. The Courts have not so construed similar agreements.

The case of Terre Haute Brewing Co., Inc. v. Dugan, 8 Cir., 1939, 102 F.2d 425, involved facts quite similar to those with which we are concerned herein. After reciting the facts, the Court stated, 102 F.2d at page 426: "But we have not here an agency coupled with interest, which must be an interest in the thing itself, and the property which is the subject of the agency. A mere interest in results or proceeds, as by way of compensation, is not enough. Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624, 629; Meyer v. Pulitzer Pub. Co., 156 Mo. App. 170, 136 S.W. 5."

The law of the State of North Dakota on the problem is set forth in the North Dakota Supreme Court's opinion in the case of Brandenstein et al. v. McGrann-Reynolds Fruit Co., 56 N.D. 201, 216 N. W. 567, 568. In that case, the plaintiffs were wholesale coffee merchants and the defendant a jobber. Plaintiffs brought suit to recover for coffee sold and delivered. Defendant answered with a general denial and counterclaimed for damages arising out of an alleged breach of contract. The facts with reference to the agreement between the parties in that case were similar to those which confront the Court herein. In holding that the defendant's counterclaim did not show a cause of action, the North Dakota Supreme Court stated as follows:

"Upon examination of the counterclaim it will be seen that it alleges the appointment of the defendant as exclusive sales agent in the cities of Fargo and Moorhead and not in the surrounding territory. While it is said it was agreed that the defendant should devote its sales organization to introducing this brand of coffee throughout the territory visited by the traveling salesmen of the defendant, the territory is not definitely defined. It further appears that the advertising was to be done in co-operation with the agents of the plaintiffs and that a commission would be paid by the plaintiffs to the defendant on all sales made by the defendant as the plaintiffs' agent in the territory and not on all sales of the coffee within the territory. It is not alleged that any selling price from the plaintiffs to the defendant was agreed upon, nor that any commission was stipulated upon a net price, or that there was in fact any definite commission. Neither is it alleged that the plaintiffs agreed to supply to the defendant whatever amount of coffee would be required to supply the defendant's customers.

"After the alleged contract, if it is a contract, was made, it is clear that the plaintiffs had the right to alter the price of coffee they would supply in response to any future order to the point where

no commission might have been realized. It is also clear that the plaintiffs had in no manner restricted themselves from the exercise of their right to withdraw from competition in the field where the defendant was active. While it is alleged that the plaintiffs arbitrarily and without cause and in violation of their agreement terminated the agency of the defendant, it is difficult to see wherein even a wrongful termination of the agency outlined in the so-called contract could result in damages that are not wholly speculative. If it be supposed that the defendant through a persistent and expensive advertising campaign had built up a trade in the plaintiffs' product to the point where the volume of business to be anticipated was fairly certain and anticipated commissions likewise constant, it must necessarily further be supposed, nothing appearing in the alleged contract to the contrary, that the plaintiffs are under no obligation to the defendant to supply the product to meet the anticipated business nor to supply it at a price which would enable the defendant to realize a profit or commission. We cannot read into the contract terms that are not alleged, and, in the absence of terms such as those indicated, we cannot regard damages to be reasonably certain which would none the less accrue to the defendant if the plaintiffs should merely exercise their rights. If the defendant anticipated that in carrying out the agency it might sustain loss through the failure to reap the anticipated profits as a reward for its activities by way of advertising and sale, it should have seen to it that the contract contained provisions for reciprocal obligations on the part of the plaintiffs. It appears that any damages which the defendant might have sustained are due to the failure of the defendant to bind the plaintiffs to any definite measure of performance rather than to any alleged wrongful termination of the agency. All the damages complained of might equally have been sustained without the revocation of the agency had the plaintiffs merely exercised their rights.

"The pleading in question is subject to the following criticism of the United States Supreme Court in the case of McGuire v. Gerstley, 204 U.S. 489, at page 501, 27 S.Ct. 332, 336 (51 L.Ed. 581):

" 'It is impossible for a court to see how these damages would necessarily or probably flow from a violation of said agreement, or that they could form a basis for any legal demand flowing from not longer fulfilling the terms of the alleged contract. The damages alleged in the pleas are most remote, vague, and shadowy in their nature, such as could not have been contemplated by any party to the alleged agreement, as the probable result of its violation. While rules of pleading have become more liberal in modern days, yet, in order to found a cause of action on the alleged shortcomings of another, they must at least be so far plainly set up as to show actual damage and the wrongful act of the other party as the proximate and natural cause. The particulars of the alleged resulting damages should be so far set forth that the court may be able to see therefrom that such alleged damages are neither obscure, vague, nor shadowy, but might, and probably would, naturally result from the acts complained of.'

"We are of the opinion that the counterclaim does not show a cause of action for substantial damages resulting from the breach of the contract alleged therein. The contract itself is utterly devoid of obligatory terms which would secure to the defendant any measure of compensation under a continuing agency. It follows that there was no error in excluding evidence to establish this counterclaim, and that the judgment should be affirmed. It is so ordered."

The case of E. I. Du Pont et al. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224, 89 A.L.R. 238, is a case very much in point. Therein, the Du Pont Company brought suit against the Reno Company for goods sold and delivered. The Reno Company set up a counterclaim for breach of contract, alleging that there was an agreement between the parties

whereby the defendant was appointed as the plaintiff's sole distributor for certain products, that the agreement, which was in writing, provided, among other things, that the Du Pont Company intended and desired to continue under the agreement so long as the distributor's services in the judgment of the Du Pont Company proved satisfactory. The United States Court of Appeals for this Circuit, speaking through Judge Sanborn, said:

64 F.2d at page 227, 89 A.L.R. 238, "There is much to be said in favor of requiring men to adhere strictly to their undertakings, whatever they may be, but there are certain established rules with reference to contracts which are not to be disregarded, no matter how great the hardship may be which grows out of an adherence to them. No doubt, the rule which requires mutuality of obligation with respect to contracts to be performed in the future, where the promise of one party constitutes the sole consideration for the promise of the other, arises from what is regarded by the courts as the inherent unfairness of enforcing a contract which requires performance by one of the parties, but leaves the other party free to accept or reject performance. * * *"

64 F.2d at page 228, 89 A.L.R. 238, "If there is uncertainty, lack of mutuality, or lack of consideration in the contract with which we are concerned, it arises out of the fact that the Reno Company was in a position at any time to terminate the contract without incurring any liability therefor. Had the contract been one for a definite term, it might have been sustained upon the authority of Marrinan Medical Supply, Inc., v. Ft. Dodge Serum Co., supra. [8 Cir., 47 F.2d 458.] The only substantial difference between the contract involved in that case and this contract was that the former was to continue for a definite period, and both parties were bound by it during that period. It is placing an unnatural construction upon this contract to hold that the promises made by the Reno Company and their performance constituted the consideration for the Du Pont Company remaining bound so long as it was satisfied, and that its promise in that regard was bought and paid for. The contract itself provides that the consideration for the services of the Reno Company is the discount of 25 per cent. upon all materials ordered from the Du Pont Company. The agreement was nothing more than a sales agency agreement, terminable at will by the Reno Company, but containing a promise of the Du Pont Company to continue so long as satisfied with the services of its distributor. For that reason, it is not controlled by Conley Camera Co. v. Multiscope & Film Co., 8 Cir., 216 F. 892, which involved a contract containing a promise of the Camera Company to sell cameras for an indefinite period to the Multiscope Company in consideration of the payment of $500 and an order for $9,000 worth of photographic wooden ware. * * *"

64 F.2d at page 232, 89 A.L.R. 238, "While it is true that in the contract under consideration there is no specific provision that the Reno Company could terminate the contract at will, we regard this fact as immaterial, and we interpret the contract as allowing it so to do. Moore v. Security Trust & Life Ins. Co., 8 Cir., 168 F. 496, 499, certiorari denied 219 U.S. 583, 31 S.Ct. 469, 55 L.Ed. 346; Willcox & Gibbs Sewing-Machine Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L.Ed. 882; Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N.W. 790, 32 A.L.R. 232.

"We gather, from the cases in this and other circuits to which we have referred that, where a contract is so lacking in mutuality of obligation or certainty of consideration that it may be canceled, as in the Woerheide Case, or that specific performance will be denied on that sole ground, as in the Miami Coca-Cola Bottling Co. Case, its termination by either party creates no liability for damages resulting from a refusal to carry on."

Holdings of many other courts are similar to that expressed by the Court of Appeals in the Du Pont case. That case and the Brandenstein et al. v. McGrann-Reynolds Fruit Co. case set forth not only

the law of North Dakota but the law of most, if not all, jurisdictions. The Court regards as immaterial the fact that the alleged agreement between plaintiff and defendant may have been made in Minnesota and might be subject to interpretation under the law of that state. The Court is of the opinion that the law of Minnesota is the same as that of North Dakota and as set forth in the Du Pont and Brandenstein cases. See Victor Talking Mach. Co. v. Lucker, 128 Minn. 171, 150 N.W. 790, 792: "It alleges that the plaintiff terminated the contract between plaintiff and defendant, arbitrarily and without cause while defendant had a large stock of machines and records on hand, then refused to sell defendant any further machines or records, and that defendant as a result suffered damage. The contract is not set out in full. There is no allegation that it was for any particular time. It was accordingly terminable at will of either party and no right to damages can be predicated on its termination. 35 Cyc. 118; Irish v. Dean, 39 Wis. 562; Stonega Coal Co. v. Louisville & N. R. Co., 106 Va. 223, 55 S.E. 551, 9 L.R.A.,N.S., 1184; Willcox & Gibbs Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L.Ed. 882; Newhall v. Journal Printing Co., 105 Minn. 44, 117 N.W. 228, 20 L.R.A.,N.S., 899."

■ Counsel for the defendant cites but one case in support of his position, Newhall v. Journal Printing Co., 1908, 105 Minn. 44, 117 N.W. 228, 20 L.R.A., N.S., 899. The Court does not regard that case as being in point. It involved *a written contract of employment* between the plaintiff and the defendant *for which a money consideration was paid* and whereby the defendant had agreed to employ the plaintiff to sell the defendant's publication within a certain specified territory under terms and conditions stated in the contract. The written contract also contained a provision as follows: " * * * provided, however, that said first party shall not terminate this contract, except for the dishonesty, incompetency, negligence, inattention, or irresponsibility of said second party."

The Court stated: "The conclusion follows that the plaintiff was entitled to recover in some amount unless the evidence showed that he was discharged for cause. An examination of the record has satisfied us that the defendants were not, as a matter of law, justified in terminating the contract for cause, and that the verdict of the jury on this point is sustained by the evidence."

There is no similarity between the written contract with which the Minnesota Court was involved in that case and the alleged loose oral agreement between plaintiff and defendant herein, which provided for no specific period, no specific price, no specific amount of goods, no agreement to continue unless certain conditions were breached, and where the defendant had the conceded right to terminate the agreement at any time it desired to do so.

■ The agreement lacks mutuality in that the defendant could terminate it at will. A contract which requires performance by one party but leaves the other free to accept or reject may not be enforced and will be construed as allowing either party to terminate it at will without being liable for the payment of damages for lost profits anticipated by the other.

The agreement not only lacks mutuality, but it is indefinite and incapable of construction or enforcement. The damages, if any, are speculative and unascertainable. See Brandenstein et al. v. McGrann-Reynolds Fruit Co., supra.

For the reasons indicated, it becomes clear that plaintiff's motion for summary judgment must be granted. Counsel for the plaintiff are directed to prepare and submit proposed Findings, Conclusions and Order for Judgment in harmony herewith and to serve copy thereof on counsel for the defendant.

It will be so ordered.