## McGUIRE v. GERSTLEY

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 168. Argued January 17, 18, 1907.—Decided February 25, 1907.

A bond to secure sales made on a credit for a specified period means that the purchasers shall not be called on for payment until after the expiration of that period, and if the declaration shows that such period has actually elapsed since the sales sued for were made, it is sufficient although it may not allege that the sales were made on the specified terms.

Pleas in defense to a suit on such a bond alleging damages for failure to sell on the terms and for prices agreed must be distinct and set forth the details. In order to found a cause of action on the shortcomings of another they must be so plainly set up as to show that they were the proximate and natural cause of actual damages sustained.

Where a bond given to secure payment for goods sold to the principals on a specified credit is complete on its face it is a clear and separate contract between the sellers and the signers of the bond, and the liability of the sureties is not, in the absence of any separate agreement in writing, affected by any future alterations of the prices of merchandise sold provided the specified credit is allowed; and parol evidence to show the existence of any other agreement as to prices between the principals of the bond is not admissible.

A plea alleging damages for breaking up a partnership is insufficient in the absence of an allegation as to duration of the partnership as no action lies for terminating, or inducing the termination of, a partnership at will.

26 App. D. C., 193 affirmed.

THE defendants in error, who were the plaintiffs below, and are hereafter so called, brought an action in the Supreme Court of the District of Columbia on December 10, 1904, against the plaintiffs in error and others, hereafter called the defendants, on a bond, and obtained a judgment, which was entered February 24, 1905, for $5,000 and interest thereon from that date. On appeal the Court of Appeals of the District affirmed the judgment, 26 App. D. C. 193, and the defendants (the two McGuires) brought the case here by writ of error.

The declaration in the action alleged the execution of a bond by all of the defendants in the action dated the eleventh day of September, 1903, which bound the defendants in the

sum of $5,000, to be paid to the plaintiffs, subject to the condition therein stated. The recital in the bond was that Monaghan and J. Charles McGuire were desirous of purchasing merchandise from plaintiffs, "now and from time to time hereafter, which the said John F. Monaghan and J. Charles McGuire have bound and hereby bind themselves to pay for in four months after the date of each respective purchase," and the condition was as follows:

"That if the said John F. Monaghan and J. Charles McGuire shall strictly and faithfully pay or cause to be paid to said Rosskam, Gerstley & Company for merchandise now and hereafter so purchased, the moneys due and to become due thereon when and as the same shall become due and payable, then this obligation shall be null and void, otherwise it shall remain in full force and virtue."

The defendants John F. Monaghan and J. Charles McGuire were principals, and the other defendants, William McGuire and John W. Clark, were sureties. Clark sued out a separate writ of error, which is hereafter disposed of. It was further alleged in the declaration that on the days set forth in the particulars of demand annexed, and which formed part of the declaration, the defendants Monaghan and J. Charles McGuire purchased from the plaintiffs merchandise aggregating the sum of $14,497.16; that they had paid on account thereof, at various times, as shown in said particulars of demand above mentioned, the sum of $9,100.48, leaving a balance overdue and unpaid amounting to $5,396.68, which it was averred the defendants had not paid or caused to be paid to the plaintiffs, and that the whole balance was still due to the plaintiffs, to their damage of $5,000, with interest, besides costs.

The statement annexed to the declaration showed merchandise sold to the defendants by the plaintiffs, commencing September 24, 1903, through almost every month from that time up to and including July 27, 1904, and amounting to the total sum stated in the declaration. The credit side of the

demand also showed payments by the defendants from and including October 27, 1903, up to and including November 11, 1904, and amounting to the sum stated in the declaration and leaving a balance due as stated therein.

Judgment by confession was obtained against the defendant Monaghan for $5,000, with interest and costs. The defendants J. Charles McGuire, one of the principals in the bond, and William McGuire, one of the sureties therein, filed two joint pleas to the declaration, and the defendant William McGuire subsequently filed three separate pleas, and still later three additional pleas.

The plaintiffs first demurred to the joint pleas of the defendants J. Charles McGuire and William McGuire and to the three separate pleas of the defendant William McGuire. They thereafter filed a demurrer to the three additional pleas of defendant William McGuire which had subsequently been filed. Both demurrers were sustained, and, the defendants refusing to amend their pleas, final judgment was entered against them.

The first (so numbered in the record) joint plea of defendants J. Charles McGuire and William McGuire alleged the indebtedness of the plaintiffs to the defendants John F. Monaghan and J. Charles McGuire in the sum of $10,000, because that on the twenty-fifth of August, 1903, the plaintiffs entered into an agreement with Monaghan and J. Charles McGuire (the two principals in the bond), by which the plaintiffs agreed that if the principals would form a copartnership for carrying on in the District of Columbia a wholesale liquor dealer's business, and deal in spirituous liquors to be furnished by the plaintiffs, and would also furnish to plaintiffs a bond in the sum of $5,000, with the defendants Clark and William McGuire as sureties, conditioned for the payment to the plaintiffs of the amount of the indebtedness to be incurred by Monaghan and McGuire in the purchase by them from the plaintiffs, from time to time, of such merchandise, that then, in consideration thereof, the plaintiffs would sell and furnish to

Monaghan and McGuire, whenever requested by them, from
time to time, at and for certain prices then specified and agreed
upon by the parties to that agreement, the merchandise re-
quired in said business and so to be requested, and would
allow to them for the goods so requested and required a con-
tinuous credit of $10,000, and that they should sell such
merchandise to their customers in said business upon such
terms as to time and otherwise as they should find and believe
to be the best terms obtainable, having in view the estab-
lishment and maintenance in said District of a demand for
the plaintiffs' goods, and that the said Monaghan and Mc-
Guire would not be required to pay for the goods so sold to
their customers until they could make collections therefor
from their said customers. It was then further understood
by and between all the parties to the said agreement, and as
part thereof, that said Monaghan and McGuire would enter
upon said business without means or capital to sustain the
same other than the continuous credit aforesaid, and that,
in order to perform their part of said agreement, they would
be required to make sales of said merchandise to their cus-
tomers on credit to be paid for by said customers in periods
varying according to circumstances, as stated. The plea then
set up that on the date first mentioned (August 25, 1903)
the said Monaghan and McGuire formed a copartnership for
the purpose stated, and thereafter furnished to the plaintiffs
a bond (the one in suit) prepared by the plaintiffs and which
the plaintiffs accepted, and the defendants then entered upon
and fully established the business mentioned and in all re-
spects performed their said agreement, so far as they were
permitted by the plaintiffs to perform the same. That they
had obtained a large number of customers, to wit, from 70
to 80, at great labor and expense, to whom they sold on the
terms mentioned goods purchased by them from the plain-
tiffs, and that from the twenty-fourth day of September, 1903,
to the tenth day of December, 1903, the plaintiffs furnished
to Monaghan and McGuire, from time to time under said

agreement, merchandise amounting in the aggregate to $10,617.55, which they in turn sold to their customers, ex-. cepting only a portion of said merchandise which they returned to and which was accepted by the plaintiffs. That the plaintiffs on the tenth day of December, 1903, wrongfully and with the intent to destroy the business so established and to sell goods directly to said customers drew on said Monaghan and McGuire for the sum of $1,500 on their said account and sent through various banks the draft to them, and on the eleventh of December, 1903, the plaintiffs wrongfully refused to furnish merchandise to the above-named defendants at the price stated, but demanded a large increase over those prices, and on the thirteenth day of January, 1904, wrongfully refused to furnish more goods under said agreement or further to perform said agreement, and forced the said Monaghan and McGuire to abandon their said business, which they had established at great expense, to wit, an expense of not less than $10,000 and in which their profits were very great; whereby the plaintiffs wrongfully destroyed the credit and business of said Monaghan and McGuire and violated the agreement of August 25, 1903, and the said Monaghan and McGuire were and each of them was thereby injured and damaged in the sum of $10,000, for which sum the said J. Charles McGuire claims judgment against the plaintiffs; and the defendants aver that they are willing that the same may be set off against the plaintiffs' demand.

The second joint plea of the same defendants (so numbered in the record) set up in substance the same agreement as the first, except that agreement was alleged to have been made September 11, 1903, and the bond was conditioned for the payment by the principals for all merchandise to be furnished by the plaintiffs on four months' credit. The plea also omitted the agreement that the principals (Monaghan and McGuire) would not be required to pay the plaintiffs until they (the principals in the bond) could make collections from their customers. The plea also alleged that the plaintiffs, shortly

after the execution of the bond in suit, wrongfully refused to sell to the principals therein merchandise on credit to the amount of $10,000 at and for the prices stated in the agreement, and wholly neglected and refused to perform the agreement between them and the principals in the bond, whereby Monaghan and McGuire were forced to abandon their said business and lose all the money and time expended by them in and about the same, and amounting to not less than $10,000, and were and each of them was injured and damaged in the sum of $10,000, for which sum the said J. Charles McGuire claimed judgment against the plaintiffs, and the defendants were willing that the same should be set off against the claim of plaintiffs.

Thereafter the defendant William McGuire filed three separate pleas. The first separate plea (numbered 1 in the record) alleged an indebtedness of the plaintiffs to William McGuire in the sum of $5,000, for that, on the eleventh day of September, 1903, and in consideration of plaintiffs agreeing to sell merchandise to Monaghan and McGuire at and for certain prices named in the agreement, and to give them a continuous credit of $10,000 for merchandise sold to them by plaintiffs, the defendants did agree to and did sign the bond mentioned in the declaration, but the plaintiffs wrongfully refused to perform the agreement or to sell to Monaghan and McGuire merchandise at the prices named in the agreement or to allow them the continuous credit mentioned therein, whereby they were prevented from paying for the merchandise purchased and mentioned in the declaration, and the defendant thereby incurred great liability and was injured and damaged in the sum of $5,000, and claimed judgment therefor, and was willing that the same might be set off against the demand of plaintiffs.

The second separate plea (numbered 2 in the record) set forth the same agreement and bond and consideration therefor that is mentioned in the first separate plea, and added that the plaintiffs, on December 11, 1903, and, again, on the twenty-third day of March, 1904, without the knowledge or consent

of the defendant, entered into other agreements with Monaghan and McGuire to sell to them, at different prices and terms of sale, the merchandise purchased from plaintiffs by them, and that since December 11, 1903, the plaintiffs have refused to sell merchandise to Monaghan and McGuire at the prices named in the agreement, though requested to do so, whereby the defendant was discharged from his liability.

The third-separate plea (numbered 3 in the record) alleged that the merchandise mentioned in the declaration as having been sold was purchased by the defendants Monaghan and McGuire under an agreement not under seal entered into before and since the eleventh day of September, 1903, between them and the plaintiffs, and not according to the terms of the bond mentioned in the declaration, wherefore the defendant prayed judgment if he ought to be charged with the said debt by virtue of said bond.

Subsequently the same defendant filed three additional pleas. By the first additional plea (which is numbered 4 in the record) he alleges that prior to signing the bond plaintiffs agreed with the principals therein to sell the merchandise referred to in the bond at and for certain prices specified in a letter dated August 25, 1903, sent by the plaintiffs to the principals in the bond. The plaintiffs represented to the defendant that the agreement was applicable to all merchandise to be purchased under the bond, and plaintiffs thereby intended to induce defendant to sign the bond, which he did in reliance upon that statement. Thereafter the principals purchased from the plaintiffs merchandise amounting to $14,477.16 and no more, and the sum of $10,617.55 was for merchandise purchased at the prices agreed upon, and the balance, $3,859.61, was for merchandise purchased at greatly enhanced prices, made under an agreement entered into on or about the eleventh day of December, 1903, without the knowledge or consent of defendant; that the principals paid plaintiffs on account of said sum of $10,617.55 the sum of $9,100.48, leaving due to the plaintiffs under the bond $1,517.07 and no more.

By the second additional plea (numbered 5 in the record) the defendant set up substantially the same agreement as to signing the bond and the consideration therefor, and then made the additional averment that the agreement was that the plaintiffs would not at any time exceed the sum of $10,000 in their sales to the principals, but the plaintiffs failed to perform the conditions, or any of them, and refused to sell at the agreed prices, and also permitted the indebtedness of the principals to continue from December 10, 1903, to January 21, 1904, to be greatly in excess of $10,000, by all of which defendant was discharged.

By the third additional plea (numbered 6 in the record) the defendant alleged the partnership agreement between the principals in the bond, but did not allege that there had been any time ever agreed upon for the continuance of such partnership, and further alleged that during the year 1903 the principals in the bond had established a good business, and the bond was executed and delivered to the plaintiff for the purpose of establishing and maintaining the credit of the principals with the plaintiffs; but that, on or about January 12, 1904, the plaintiffs, for the purpose of securing the customers which the principals in the bond had obtained for themselves, and for the purpose of selling directly to those customers, wrongfully induced Monaghan to withdraw from the partnership and enter the employ of plaintiffs, which Monaghan did, and that thereby the business of the principals was wholly destroyed, and by reason thereof they were unable to pay for the merchandise referred to in the bond and declaration, all of which was without the knowledge or consent of the defendant, by reason whereof defendant was discharged from all liability under the bond.

*Mr. Lorenzo A. Bailey* for plaintiff in error:

The agreement mentioned in the first and second joint pleas and the first separate plea of the surety is pleaded according to its legal effect, which is proper and sufficient.

1 Chit., Pl. 334. The breaches are set out with sufficient certainty.

The damages claimed are such as may be presumed to result from the breach. Such damages are matter of evidence and need not be alleged and are scarcely ever stated but in a general manner. *Barruso* v. *Madan*, 2 Johns. Rep. 149; 1 Chit., Pl. 371. Profits of such a business may be considered in damages. 1 Sedgw., Dam., § 182.

In this District, before the Code, the right of a surety to set off a debt due his principal in an action against the principal and surety and the right of one member of a partnership to set off a debt due the entire partnership was recognized. *United States* v. *West*, 8 App. D. C. 59. The Code D. C. § 1568, provides that "in an action against principal and sureties an indebtedness of the plaintiff to the principal may be set off as if he were the sole defendant." Sec. 1563 of the Code fully justifies the pleas of set-off. By § 1565, Code D. C., each claim of set-off may be considered as an action against the plaintiff.

The second separate plea of the surety McGuire sets up an agreement, preceding the bond, fixing the prices and terms; that this agreement was the consideration for giving the bond; that the prices and terms were changed by subsequent agreements made without his consent or knowledge. The consideration was thereby destroyed and the surety discharged. This may be established by parol evidence. *Marchman* v. *Robertson*, 77 Georgia, 40; *Hickock* v. *Farmers' &c. Bank*, 35 Vermont, 476; *Campbell* v. *Gates*, 17 Indiana, 126; *Moroney* v. *Coombes*, 88 S. W. Rep. 430; *Dicken* v. *Morgan*, 54 Iowa, 684; 1 Brandt, Sur. 454; 5 Cyc. 742, 744, 818.

The fifth separate plea of the surety alleges delivery upon conditions therein set forth, which were "known to and accepted by the plaintiffs," but which have never been performed. This operated as a discharge. *Campbell* v. *Gates*, 17 Indiana, 126; *Hickock* v. *Farmers' &c. Bank*, 35 Vermont, 476.

The Court of Appeals held that the bond, not being by any

of its terms dependent upon the agreements mentioned in these pleas, the relation between them must depend for its establishment upon parol evidence and that such evidence was inadmissible.

There is nothing in the pleas to justify the finding, or an inference that the surety was without written evidence to sustain the pleas. But parol evidence is admissible to show matter discharging a surety. Cases *supra*.

The Court of Appeals held that the sixth separate plea of the surety was either a plea of set-off or else of recoupment, and as such, bad in substance; but it is not such in form or in effect. It is based upon the proposition that such misconduct on the part of the obligees in a bond, wilfully and maliciously preventing the performance of the condition of the bond and tantamount to fraud, will discharge a surety. *Trustees* v. *Miller,* 3 Ohio 261.

*Mr. Eugene A. Jones,* with whom *Mr. Simon Wolf* and *Mr. Myer Cohen* were on the brief, for defendants in error:

Damages recoverable under a contract must be the natural and proximate result of the breach of the contract or such as are in contemplation of the parties at the time the contract is made. Sedgwick, Dam., 8th ed., § 146.

The prices and terms upon which the merchandise was to have been sold, are not set forth and the pleas are vague and indefinite in all their allegations. A plea of set-off must disclose a state of facts such as would entitle the party pleading to an action if he were suing as plaintiff, and must contain the substance, at least, of a declaration. *Crawford* v. *Simonton,* 7 Port. (Ala.) 110; Waterman, Set-off, §§ 646, 648; *Garrett* v. *Love,* 89 N. Car. 205; 19 Ency. Pl. & Pr. 754.

A plea of set-off, containing facts which would entitle the defendant to nominal damages only, is insufficient; it will not even affect the matter of costs. *Hitchcock* v. *Trumbull,* 44 Minnesota, 475.

Where a promise is made to two or more jointly all the

promisees must join as plaintiffs in an action for the breach thereof. 15 Am. & Eng. Ency. Pl. & Pr., 528.

A cause of action in favor of a surety alone cannot be set off in a suit against principal and surety. *Corbett* v. *Hughes,* 75 Iowa, 281; 25 Am. & Eng. Ency., 2d ed., 540.

The violation of a collateral agreement, such as that set up in the fifth separate plea of William McGuire does not operate as a discharge of surety. A bond cannot be delivered to the obligee, in escrow, or upon a condition not expressed in the instrument itself. *Newman* v. *Baker,* 10 App. D. C. 187.

The sixth separate plea of William McGuire has been treated by counsel and the court below as a plea of set-off, and as a plea of recoupment; it is, in form, neither, and is insufficient in substance to meet the requirements of either.

No action lies for terminating a partnership at will. *Karrick* v. *Hannaman,* 168 U. S. 328.

A defense by way of recoupment must arise out of the same contract or suit on which the plaintiff relies to make his case. *Van Buren* v. *Diggs,* 11 How. 461.

An alteration or modification of an independent or subsidiary agreement cannot affect the surety's liability. *Domestic Sewing Machine Co.* v. *Webster,* 47 Iowa, 357; *Amicable Mut. Ins. Co.* v. *Sedgewick,* 110 Massachusetts, 163; *Stutz* v. *Stranger,* 60 Ohio St. 384; *U. S. Glass Co.* v. *Matthews,* 61 U. S. App. 542.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The declaration in this case is attacked by the defendants under the rule that the court will go back to the first substantial defect appearing in the pleadings before the filing of the demurrer. The criticism made by the defendants upon the declaration is that it does not sufficiently show a violation of the terms of the bond. The defendants say the bond limits the liability of the sureties to pay for such mer-

chandise only as was sold on a four months' credit, and that the declaration does not show that the terms of the sale of the merchandise were those which were set forth in the bond. The declaration shows a failure to pay for certain merchandise alleged to have been sold to the defendants, amounting to a stated sum on the dates set forth in the particulars of demand, which demand was annexed to and forms a part of the declaration. This demand showed that the last item of sale was made July 27 prior to December 11, 1904. The condition of the bond meant that the defendants should not be called upon to pay until after the expiration of four months from the date of each of the respective purchases. The defendants had, as the pleadings show, paid for all the merchandise purchased, except the balance therein stated, and four months had in fact elapsed since the last sale. The defendants have, therefore, obtained four months after the purchase before they were called upon to pay. We think the declaration was sufficient.

We are also of opinion that the two joint pleas of J. Charles McGuire and William McGuire, and the first separate plea of the latter, which it is contended set up offsets to the plaintiffs' claim, did not allege facts with sufficient distinctness to constitute a defense to the action. Neither of these pleas is sufficiently distinct to constitute a good pleading. What the special agreement was that is alleged to have been made between the principals in the bond and the plaintiffs, in consideration of which the bond was signed by the surety, is not stated with any degree of particularity. It simply states that the agreement in this respect was that the merchandise should be sold to the principals in the bond at and for certain prices specified in the agreement, but the pleas do not set them forth, nor do they state for how long a time such agreement was to remain in existence, nor how the defendants suffered damage to the extent named in the pleas, or to any extent. It is impossible for a court to see how these damages would necessarily or probably flow from a violation of said

agreement, or that they could form a basis for any legal demand flowing from not longer fulfilling the terms of the alleged contract. The damages alleged in the pleas are most remote, vague and shadowy in their nature, such as could not have been contemplated by any party to the alleged agreement, as the probable result of its violation. While rules of pleading have become more liberal in modern days, yet in order to found a cause of action on the alleged shortcomings of another, they must at least be so far plainly set up as to show actual damage and the wrongful act of the other party as the proximate and natural cause. The particulars of the alleged resulting damages should be so far set forth that the court may be able to see therefrom that such alleged damages are neither obscure, vague or shadowy, but might and probably would naturally result from the acts complained of. Within such limitations, which have always existed, the three pleas are insufficient.

The next succeeding plea is marked in the record the second separate plea of the defendant William McGuire. The court below treated this plea, together with the third separate plea of the defendant, and his fifth (in truth, the second) additional plea, as together resting upon common ground. We think they may be properly so regarded. It is seen from the whole record that the principals in the bond sued on were expecting to have business transactions with the plaintiffs, by purchasing from them liquors, which they expected to sell to others at profit, but the plaintiffs did not care to sell the goods to these principals without some security for payment of the goods sold when cash payment was not exacted. The bond in suit was thereupon agreed to be given as security for the payment of the merchandise to be sold by the plaintiffs to the principals, and which the principals were bound to pay for in four months after the date of each respective purchase. This is a clear and separate contract between the plaintiffs and the signers of the bond, and there is nothing in the declaration or bond which shows the existence of any

other agreement than that mentioned therein, or that an alteration in the prices of the goods sold to the principals by the plaintiffs could, or would, have any effect upon the liability of the sureties. The bond being complete in itself on its face, it cannot be seen that any future alteration of the prices for the sale of the merchandise, arrived at between the plaintiffs and the principals in the bond, would be material to or alter the liability of the sureties for the payment of the merchandise sold and delivered at the prices agreed upon, after four months from the date of purchase. There is no allegation in these pleas that any separate agreement was in writing, and the bond itself does not show the existence of any other agreement or the sale of the property upon any other conditions than those mentioned in the bond itself. Under such circumstances evidence by parol going to show any other agreement between the principals of the bond and the plaintiffs would not be admissible. *Seitz* v. *Brewers' &c. Co.,* 141 U. S. 510; *Domestic Sewing Machine Co.* v. *Webster,* 47 Iowa, 357. In holding these pleas insufficient we think the court below was right.

This leaves the fourth (the first additional) and the sixth (the third additional) pleas. The fourth plea alleges that the merchandise referred to in the bond was to be sold at and for certain prices specified in a letter dated August 25, 1903, and sent by plaintiffs to Monaghan and McGuire. What those prices were is not stated in the plea, while the representations alleged in the plea to have been made, that the agreement was applicable to all merchandise to be purchased under the bond, would require parol evidence, as there is no pretense that these representations were made in writing or that the letter referred to them in any way. The same consideration existing in regard to the pleas last mentioned would operate here and render the plea insufficient.

The third additional plea (marked 6 in the record) attempts to set up a cause of action against the plaintiffs because, as alleged, they induced the defendant Monaghan to dissolve

the partnership between him and McGuire and to enter the plaintiff's employ, for the purpose, on plaintiff's part, of increasing the plaintiff's profits and with intent to wrongfully destroy the business of the defendants Monaghan and McGuire. As the court below well says, there is in this plea no allegation as to how long the partnership was to continue, and no action would lie for terminating or inducing the termination of a partnership at will. *Karrick* v. *Hannaman,* 168 U. S. 328, 333. We do not see how any legal damage to the sureties under such circumstances can be said to be the proximate, natural or probable result of such action on the part of the plaintiffs. After the dissolution of the partnership of course no sales could thereafter be made, and in relation to sales already made with credit according to the terms of the bond, it is impossible to see how it could be said that the ruin of the business of the principals of the bond, and hence the damage to the sureties could be regarded as the probable consequence of the act of the plaintiffs in procuring Monaghan to dissolve the partnership and enter their employ. Whether treated as an offset or recoupment, or simply as an independent cause of action, the plea does not set up facts sufficient to constitute a valid set-off, recoupment or cause of action.

The judgment of the Court of Appeals was right and is
*Affirmed.*