## NEW AMSTERDAM CASUALTY CO. v. W. T. TAYLOR CONST. CO.

(Circuit Court of Appeals, Fifth Circuit. May 13, 1926.)

No. 4773.

**1. Principal and surety ⟾66(2).**

Surety's obligation need not be coextensive with that of his principal to obligee.

**2. Principal and surety ⟾129(3)—Bonding company, by delivering to subcontractor bond securing faithful performance of subcontract, held not to confer authority on subcontractor to change terms thereof.**

Where bonding company delivered to subcontractor bond to secure performance of subcontract, which was complete, except for counter signature of bonding company's state agent and delivery to obligee, held, that it did not confer on subcontractor actual or apparent authority to alter instrument or change meaning thereof.

**3. Alteration of instruments ⟾2.**

Contract may be modified, by adding provisions which do not change legal effect of those contained in original contract.

**4. Principal and surety ⟾100(6)—Change in subcontract to include additional work held not to affect surety's liability on bond securing performance of original contract, whether change occurred before or after delivery of bond.**

Change in construction of subcontract to include additional work, which did not materially vary original subcontract, held not to affect bonding company's liability on bond to secure faithful performance of original subcontract, regardless of whether subcontract was changed before or after bond was delivered to subcontractor.

In error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by the W. T. Taylor Construction Company against the New Amsterdam Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Borden Burr, of Birmingham, Ala. (Borden Burr, Percy, Benners & Burr and Lloyd Bowers, all of Birmingham, Ala., and W. T. Donaldson, of Port Arthur, Tex., on the brief), for plaintiff in error.

Jelks H. Cabaniss, of Birmingham, Ala. (Jelks H. Cabaniss and Cabaniss, Johnston, Cocke & Cabaniss, all of Birmingham, Ala., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, W. T. Taylor Construction Company (herein called the plaintiff), against the plaintiff in error, New Amsterdam Casualty Company (herein called the defendant), on a bond to the plaintiff, executed by J. E. Mansberger, as principal, and the defendant, as surety, for the faithful performance by Mansberger of a contract between him and the plaintiff, which was referred to in the bond as "a contract bearing date of December 12, 1923, with the obligee, for furnishing all materials and labor necessary for the laying and construction of base courses of federal aid project No. 99, section B and north end of section A, beginning at station 327–50 and ending at south end of section B, which contract plans and specifications are hereby referred to and made a part of this bond." The complaint set out what purported to be a copy of the contract referred to in the bond sued on, and alleged failures of Mansberger to perform obligations of that contract.

The case was tried on issue joined on plaintiff's complaint, and defendant's plea of

general issue, pleaded in short by consent, "with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, and with leave to the plaintiff to give in evidence any matter which, if well pleaded, would be admissible in reply to such defensive matter, to have effect as if so pleaded." There was evidence to the following effect:

On and prior to December 12, 1923, the plaintiff had a contract with the state of Alabama for the construction of a portion of a certain highway in Shelby county, Ala., known as federal aid project No. 99, which contract included various classes of work, each of such classes of work to be done and performed at stated unit prices, among said classes of work being clearing and grubbing, common excavation, solid rock excavation, base courses, guard rail posts, guard rail cable and fittings, right of way markers, bermuda grass sodding, and many others. On the last-mentioned date the plaintiff and Mansberger, at Birmingham, Ala., entered into a contract, which was embodied in an instrument, typewritten on two sheets of paper, in which the plaintiff was called party of the first part, and Mansberger was called party of the second part. That instrument, which at the bottom of the second sheet was dated December 12, 1923, and signed by each of the parties thereto, after recitals of said contract with the state of Alabama, and of considerations, contained, on the first typewritten sheet thereof, the following:

"The party of the second part agrees to furnish all labor, teams, machinery, tools, and all necessary equipment, except as otherwise provided, and to perform all work required to be furnished, done, and performed in and about the construction of the first and second stone base courses from date of this contract, to wit: To furnish all materials and labor to do and perform all work which is necessary and may be required in the laying and construction of said base courses of that portion of federal aid project No. 99, all of section B and the north end of section A, beginning at or near station 327–50 and ending at the south end of section B, same to be in accordance with the plans and specifications of the state highway department of Alabama, and to the complete satisfaction of its engineering department and the engineering department of the bureau of public roads, which contract plans and specifications are hereby referred to and adopted as a part of this contract, as if fully set out herein.

"The party of the second part hereby agrees to begin work, herein covered by this contract, at once. It is further agreed that, if the party of the second part should fail to comply with the terms and agreements of this contract, and to do said work herein provided, and carry said work on satisfactorily and in accordance with the terms and provisions of the said contract of the state highway department, and according to the judgment of the engineer of the state highway department and the party of the first part, the party of the first part may retain the reserved percentages, together with any moneys due the party of the second part, and reimburse itself therefrom for any damages which the party of the first part may sustain by reason of nonperformance of this contract by the party of the second part, and the party of the first part shall have the right, as it may elect, to employ additional teams, men, and equipment belonging to the party of the second part, and use same to complete the work with its own agents or employees, and the party of the second part shall not have the right to remove or cause to be removed from the work any of the teams, tools, or other equipment until the final completion of the work to the entire satisfaction of the state highway department of Alabama."

The second sheet of that instrument contained provisions for the payments to be made by the party of the first part to the party of the second part for faithful performance by the latter, such payments to be the amounts received by the plaintiff under its contract with the state for the work mentioned, less 10 per cent. thereof, and other provisions. That contract was changed by adding provisions which were typewritten on a sheet of paper, which was inserted between the first and second sheets of the original instrument. The inserted sheet contained the following and other provisions:

"The party of the second part further agrees to furnish all labor, material, and necessary equipment, to perform all work required to be furnished, done, and performed in and about the construction and placing of guard rail posts, guard rail cable and fittings, right of way markers, and bermuda grass sodding complete on the same sections of said work as is covered by the stone base courses set out in this contract; also to construct or finish the construction of a culvert at station 614—80, as shown on the plans. The party of the second part also agrees to take over any and all materials now on the work, said materials subject to check by the party of

the second part, at the invoice price to the party of the first part. For the faithful performance of the terms and conditions in said contract, the party of the first part hereby agrees to pay to the party of the second part the same price and amount for all work covered by this agreement which the party of the first part receives from the state of Alabama, save and except 10 per cent. thereof, which is to be performed by the parties of the second part."

The name of each of the parties was signed at the bottom of the inserted page. The evidence was in conflict as to when the contract was changed as just stated. According to the testimony of Mansberger, the change was made after the bond sued on was signed and delivered, as stated below. According to other testimony, the change was made on the same day the original instrument was signed. Soon after December 12, 1923, Mansberger went to Columbus, Ohio, and there applied to the defendant to become his surety on a bond to the plaintiff in the sum of $40,000, and exhibited to the defendant the first above mentioned signed instrument as the contract to be bonded. Pursuant to that application the bond sued on was signed. It was handed to Mansberger, to be carried to Birmingham and delivered, after it was countersigned by the defendant's Alabama agent. That was done.

Before this suit was brought the defendant had no knowledge or information of any contract between Mansberger and the plaintiff, except the one which was evidenced by the instrument which was first signed, as above stated. The instrument set out in the complaint was the one embodying the above-mentioned additional matter. Mansberger did not perform the original or the changed contract in accordance with the terms thereof, and, in accordance with provisions of the contract between the plaintiff and the state of Alabama, was compelled to and did cease operations under his contract. Promptly after this default the defendant was given written notice thereof, and was afforded the opportunity to assume and complete said contract, and failed to do so. The plaintiff completed the work Mansberger had contracted to do at a cost to it exceeding what was paid to it therefor under its contract with the state of Alabama. The evidence was not such as to show separately the amount of the plaintiff's loss in completing the work called for by the first signed instrument and the amount of its loss in completing the work called for in the addition to the contract. The bulk of the work contracted for by Mansberger was that described in the first signed instrument. The court's charge to the jury included the following:

"(3) If the contract was changed by adding additional work after the contract with the bonding company was executed, it ends there, and there could be no recovery on the bond for that reason, though Taylor & Co. could recover against Mansberger on the contract they finally made.

"(4) So you see you have only one question of fact to consider, and that is whether the contract that is now relied upon and sued upon included the additional work and the base work, and was made before the bond was executed or afterwards.

"(5) If you are reasonably satisfied it was made on December 12th, and then included all the work that ever went into it, namely, the Bermuda grass and all those other items, and that all happened on December 12th, then the plaintiff is entitled to recover. * * *

"(6) * * * And that would be true, although you believe Mr. Mansberger presented a different contract to the surety company in Columbus.

"(7) In other words, if you believe he presented a contract to the surety company in Columbus that only included the base work, and not this Bermuda grass work, and the other work, but included the base work alone, the surety company would still be liable, because he would be the representative of the bonding company, as I see it, the bonding company having given him the bond for delivery, afterwards countersigned here in Birmingham by Ford & Myatt, and therefore it was in his possession as their agent until he delivered it, January 1st or 2d, to Taylor Construction Company. * * * it then first became a contract between the bonding company and the Taylor Construction Company. * * * Up until that time Mr. Mansberger was the agent of the New Amsterdam Casualty Company in the transaction, and in the custody of the bond, and, that being true, they would not be excused by the fact, if it be a fact, whether he presented honestly or intentionally a different contract from that entered into on December 12th by Taylor & Co. and Mansberger.

"(8) So you have only the single question of fact to consider, whether the contract finally made on December 12th included this additional work or did not include it.

"(9) If it did include, then, as I say, the plaintiff would be entitled to recover on the

bond, because that contract would be the contract bonded, * * * and it was undoubtedly broken by Mansberger, according to the undisputed evidence.

"(10) You will address yourselves, then, on the question of liability, to that single question, whether you believe that the contract finally made on December 12th included all the work, or whether you believe there was a second contract or modification of the first contract, made after December 17th, that put in this additional work that was not in it at that time.

"(11) If, after having done that, you are reasonably satisfied from the evidence that the contract of December 12th contained all the additional work ever put in in any contract between Taylor & Co. and Mansberger, and all the material items that ever went in any contract between Taylor and Mansberger, * * * in other words, if you believe that the only contract between Taylor & Co. and Mansberger contained the provisions put in it December 12th, then the plaintiff would be entitled to recover on the bond, and then you would have to consider the question of damages.

"(12) Now, the damages, if the guaranteed contract, if there was such guaranteed contract, was not kept, would be what Taylor & Co. lost by reason of Mansberger not carrying out his contract."

Separate exceptions were reserved to each of the just set out parts of the court's charges. There was judgment pursuant to a verdict in favor of the plaintiff for the amount of the bond, with interest.

Above set out rulings of the court were to the effect that under the evidence the defendant was not bound at all, unless it was bound as surety for Mansberger's performance of all the work he contracted to do, and that, if the contract between plaintiff and Mansberger, as it was changed as above stated, was in force when the bond sued on was applied for and executed, defendant was so bound as a result of Mansberger's delivery to the plaintiff of the bond sued on, though before Mansberger's default defendant had no knowledge or information as to any existing or proposed obligation of Mansberger to the plaintiff, other then that evidenced by the instrument, signed by Mansberger and the plaintiff, which was exhibited to the defendant when the bond was applied for.

[1,2] It was open to the defendant to become surety for Mansberger's performance of part only of the work he contracted to do. A surety's obligation need not be coextensive with that of his principal to the obligee. One may become another's surety for the performance of part only of what the latter is obligated to do. 32 Cyc. 33. Under no evidence adduced was the defendant liable as surety for Mansberger's performance of all the work he contracted to do. The bond sued on evidences the defendant's consent to be surety for Mansberger's performance of the work described in that instrument. No evidence adduced supported a finding that the defendant consented to stand for Mansberger's performance of any other work, or that, by estoppel or otherwise, it precluded itself from denying that its obligation was more extensive than was imported by the terms of the bond sued on, construed in the light of the circumstances attending its execution.

When Mansberger was put in possession of that instrument, nothing remained to be done to perfect it as evidence of a contract except to have it countersigned by defendant's Alabama agent and delivered. This being so, the act of the defendant in handing the already signed and (except as to the required countersignature) completed instrument to Mansberger, for it to be countersigned and delivered, did not confer on Mansberger actual or apparent authority to alter the instrument, or change the meaning imported by its terms, when it was signed by the defendant. Blakey v. Johnson, 13 Bush (Ky.) 197, 26 Am. Rep. 254; Toomer v. Rutland, 57 Ala. 379, 29 Am. Rep. 722. By the instrument first signed by Mansberger and the plaintiff, which was exhibited to the defendant, Mansberger became obligated to furnish all necessary material and labor for specified work, and the plaintiff became obligated to pay stated compensation for that work. Those obligations remained in force, and were not altered or impaired by the parties subsequently changing the contract by making it cover additional work, without changing their agreement as to the work first stipulated for or the price of it. The situation resulting from the above-stated change of the original contract between plaintiff and Mansberger was not substantially different from what it would have been if, instead of adding to the original instrument, a new instrument, embodying what was added, had been signed as a separate contract. So far as concerned the work referred to in the original instrument, namely, the laying and construction of base courses of the described part of the named highway project, the original contract was not abrogated or changed.

[3,4] A contract may be modified by adding

provisions which do not change the legal effect of those contained in the original contract. Under the evidence, the defendant properly could be held liable for Mansberger's failure to perform the work first contracted for; the change made in the original contract not being such as materially varied the contract so far as the compensated surety agreed to be responsible for performance of it, or as involved harm to such surety; the existence, whether before or after the date of the making of the bond sued on, of Mansberger's obligation to do work other than that described in the bond, not having the effect of altering essentially the obligation for which the defendant agreed to be bound. McGuire v. Gerstley, 204 U. S. 489, 27 S. Ct. 332, 51 L. Ed. 581; Stuts v. Strayer, 60 Ohio St. 384, 54 N. E. 368, 71 Am. St. Rep. 723; Crouch v. Parker, 188 Ind. 660, 125 N. E. 453, 7 A. L. R. 1598; American Bonding Co. v. United States, 233 F. 364, 147 C. C. A. 300. So far as the work originally contracted for by Mansberger was concerned, there was no lack of a meeting of the minds of the parties to the bond sued on.

In the light of the instructions given to the jury, the verdict imported findings that the defendant was bound as Mansberger's surety for the performance of all the work he contracted for, and that the amount awarded covered losses for which the defendant did not consent or become bound to be liable. Those instructions are not in harmony with above-expressed conclusions. Because of the errors indicated by what has been said, the judgment is reversed, and the cause is remanded for a new trial.

Reversed.