**In re MICROWAVE PRODUCTS OF AMERICA, INC., Debtor.**

**AMERICAN UNIVERSAL INSURANCE COMPANY, Plaintiff,**

v.

**John R. DUNLAP, Trustee of the estate of Microwave Products of America, Inc., the above-named debtor, Defendant.**

**Bankruptcy No. 88–27990–D(sbb). Adv. No. 89–0362.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Aug. 24, 1990.

David Cocke, Borod & Kramer, Memphis, Tenn., for Litton Industries.

Michael Coury, Memphis, Tenn., for Unsecured Creditors Committee.

Felice Cutler, Dilworth, Paxson, Kalish & Kauffman, Los Angeles, Cal.

Steve Douglass, Memphis, Tenn.

John R. Dunlap, Memphis, Tenn., trustee.

Thomas Fulton, Memphis, Tenn.

Richard Gossett, Chattanooga, Tenn., Harris Quinn, Memphis, Tenn., Clifton Smith, Los Angeles, Cal., for Microwave Products of America, Inc.

Jennie D. Latta, Memphis, Tenn., for MagnaTek, Inc.

Jack F. Marlow, Memphis, Tenn., for AUIC.

John L. Ryder, Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for First Interstate Bank.

Karl A. Schledwitz, Memphis, Tenn.

Henry C. Shelton, III, Memphis, Tenn., for Western Industries.

Ellen Vergos, Memphis, Tenn.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE NATURE, VALIDITY AND VALUE OF THE SECURED CLAIM FILED BY PLAINTIFF, AMERICAN UNIVERSAL INSURANCE COMPANY

BERNICE BOUIE DONALD,
Bankruptcy Judge.

The above-styled core adversary proceeding[1] came on for hearing on the complaint of the plaintiff, American Universal Insurance Company ("AUIC"), seeking a judicial determination of, inter alia, the secured status of the asserted claim of AUIC.

The following shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### BACKGROUND FACTS

The relevant background facts are set forth herein from the complaint of AUIC and the Answer of the defendant, Trustee, John R. Dunlap ("Trustee"), and are largely undisputed. AUIC alleges that:

(1) This adversary proceeding arises in and relates to the chapter 11 case of the debtor, Microwave Products of America, Inc. ("MPA"), case no. 88–27990–D(sbb) pending in this court. The court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 157 and § 1334, 11 U.S.C. § 506 and Bankruptcy Rule 3012.

(2) On the 28th day of October, 1988, the debtor, MPA, filed a voluntary petition un-

---

1. 28 U.S.C. § 157(b)(2)(A), (K), & (O).

der chapter 11 of the Bankruptcy Code. MPA continued to operate as debtor-in-possession until the 28th day of July, 1989, at which time, John R. Dunlap, Esq., was appointed trustee and continues to serve in that capacity. The trustee is presently operating the debtor business.[2]

(3) Litton Industries, Inc. ("Litton"), a secured creditor of MPA, has proposed a plan of reorganization. As a part of that plan, it is suggested that a determination be made of the secured status of the asserted claim of AUIC. On the 31st day of January, 1989, AUIC filed a proof of claim in which AUIC, allegedly as a secured creditor, asserts a security interest in all of the inventory, equipment, accounts receivable, proceeds and assets of MPA. MPA, and subsequently the trustee of the estate of MPA, have been allowed to use the cash, inventory, equipment, accounts receivable, proceeds and assets of MPA in the continued operation of the business pursuant to § 363 and certain cash collateral orders, which are a part of the court's record.

(4) MPA executed certain promissory notes, security agreements and other documents granting a security interest in the assets owned by MPA to AUIC, which security interest have been perfected by filing with the proper filing authorities.

Conversely, the chapter 11 trustee argues that:

1. AUIC has no standing to assert its complaint for the reason that its claim is a contingent claim of a surety which must be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B).

2. AUIC has no standing to assert its complaint for the reason that its claim is a contingent claim of a surety, and, therefore, must be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B).

3. Further, that the execution and delivery of any documents on what AUIC bases its claim to a perfected security interest constitutes a voidable transfer pursuant to 11 U.S.C. § 547(b).

4. Therefore, AUIC does not hold a valid enforceable security interest in any of the property covered by the aforementioned documents.

5. If the court determines that MPA obtained possession of the collateral on August 16, 1988, instead of July 29, 1988, as determined by the closing documents of the sale, then MPA's execution and delivery of AUIC's alleged security interest in the collateral described in the Form UCC–1 Financing Statement which was recorded in Tennessee, and the attempted perfection of such security interest, constitute voidable transfers pursuant to 11 U.S.C. § 547(b); and, consequently, AUIC does not hold a valid and enforceable security interest with respect to any of the collateral covered by such documents.

The chapter 11 trustee has counterclaimed seeking to avoid any security interest claimed by AUIC pursuant to its security agreement, UCC–1 financing statements, and any other documents executed therewith and delivered to MPA. The trustee alleges that such transfers were preferentially made within ninety (90) days of the chapter 11 petition filing date, while the debtor was insolvent and are therefore voidable, transfers under 11 U.S.C. § 547(b).

The trustee also asks the court to disallow AUIC's claim pursuant to 11 U.S.C. § 502(e)(1)(B). AUIC filed affirmative defenses stating that:

1. The trustee's counterclaim fails to state a claim upon which relief can be granted.

2. The secured interests of AUIC are not avoidable pursuant to 11 U.S.C. § 547(c)(1) in that the transfer was intended by MPA and AUIC to be a contemporaneous exchange for new value given to MPA and was, in fact, a substantially contemporaneous exchange.

3. The transfers ... are not avoidable because, pursuant to 11 U.S.C. § 547(c)(3), those transfers created a security interest in property, and were perfected on or before ten days after MPA received possession of the property.

---

2. 11 U.S.C. § 1108.

4. As alleged by MPA, AUIC bound itself to pay Litton an amount not to exceed the amount owed by MPA to Litton. While the trustee has entered into a compromise with Litton as to the amount owed by MPA, the question of the amount of that liability has not been settled between AUIC and Litton, and the question of the amount of such liability is the subject of a lawsuit pending in California.

5. Litton's confirmed plan, which was endorsed by the trustee, provides that Litton's Class 2 claim "shall include the liens granted to Litton under said note and the liens granted to AUIC under its agreements with the debtor". No limitation is expressed in the plan as to the extent to which AUIC's lien may be asserted except as the lien may be affected by the provisions of §§ 547, 550, and 551 of the Bankruptcy Code.

6. AUIC's lien is granted in separate documents and agreements which stand alone, and are independent of the claims and liens of Litton.[3]

The issues for judicial determination are:

1. Whether AUIC has a properly perfected lien.

2. Whether AUIC's lien may be avoided as a preference under 11 U.S.C. § 547.

3. Whether AUIC's claim should be disallowed pursuant to 11 U.S.C. § 502(e)(1)(A) or (B).

4. What is the proper standard of valuation of the collateral in which AUIC claims a security interest?

## DISCUSSION

### I

### The Law of Principal and Surety

■ The relationship of principal and surety, or suretyship, in its broadest sense, is the relationship occupied by a person liable for the payment of money or for the performance of an act by another, such liability being collateral as to such person,

and who is liable to suffer loss in the event of the failure of such other person to pay or perform, but whose liability is terminated at once, fully and completely, if such other person does pay or perform. 72 C.J.S. Principal and Surety § 1.

■ In a more narrow legal sense, it is a contract whereby for consideration, one person or entity obligates himself to satisfy the debts of another in case of a default. The general rule is that the law of the situs of the contract controls. It is uncontroverted that Rhode Island law governs the instant surety contract.[4]

■ The general rule is that the suretyship liability is the same as that of the principal, and cannot be greater than that of the principal, either as to amount or as to the burdensome character or the conditions. However, the obligations of the principal and surety do not have to be equal. *New Amsterdam Casualty Co. v. W.T. Taylor Const. Co.*, 12 F.2d 972 (5th Cir.1926).

■ The liability of the surety is measured by the terms of his contract. *Id. See,* also, 72 C.J.S., *supra,* § 1. On breach by the principal of the contract, the surety becomes liable. 72 C.J.S., supra § 95. The liability of the surety is measured by the loss or damage directly resulting from default. *Id.*

### II

■ Query, is the lien of AUIC properly perfected under applicable non-bankruptcy law? Considering a totality of the particular facts and circumstances, the court finds that AUIC properly perfected its security interest under applicable non-bankruptcy law. A security interest is perfected when it has attached, and when all of the applicable steps required for perfection have been taken. Uniform Commercial Code 9–303(1). In order for a security interest to attach, 1) there must have been an agreement; 2) value must have been given,

---

**3.** The affirmative defenses are set forth verbatim from the trustee's Answer and Counterclaim.

**4.** The parties through documents stipulated to the controlling jurisdiction.

and the debtor must have rights in the collateral. U.C.C. 9–204(1), *see,* also, e.g., *Avco Delta Corp. Canada, Ltd. v. United States,* 459 F.2d 436 (7th Cir.1972).

U.C.C. § 9–302(1) states:

A financing statement ("UCC–1") must be filed to perfect all security interests except .... a security interest in collateral must be perfected within ten (10) days. See, U.C.C. 9–306(3).

■ Trustee argues, inter alia, that AUIC is not properly perfected because AUIC failed to perfect within ten (10) days of July 29, 1988, c.f. 11 U.S.C. § 547(e)(2)(A). This court has previously concluded that the operative date for the instant sale between Litton and MPA is the closing date of the transaction, namely August 16, 1988, and not the "effective date" set forth in the parties' documents. Therefore, since MPA and AUIC contracted on August 15 and August 16, 1988, respectively, and the security agreement was immediately filed, AUIC is deemed to have properly and timely filed with respect to the South Dakota collateral.

Query, is AUIC's lien avoidable as a preference under 11 U.S.C. § 547(b)?

■ The technical elements of a preference are set out in 11 U.S.C. § 547(b). By virtue of 11 U.S.C. § 547(g), the trustee has the burden of proving the avoidability of a transfer under § 547(b), and the creditor or party-in-interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of § 547. 11 U.S.C. § 547(b) provides as follows:

§ 547. **Preferences.**

(a) In this section—

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debtor for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor; [5]

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent; [6]

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

**5.** A transfer that benefits a creditor indirectly may constitute a preference. For example, a pledge of collateral on the eve of bankruptcy to secure a letter of credit issued in favor of an unsecured creditor in connection with an antecedent debt was a transfer to the bank for the benefit of the unsecured creditor and was a preference. *In re Compton Corp.,* 831 F.2d 586 (5th Cir.1987). See, also, *C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990).

**6.** Insolvent is defined at 11 U.S.C. § 101(31), and is based on a "balance sheet" standard.

A transfer that would otherwise be considered preferential may be protected from successful attack by the trustee. 11 U.S.C. § 547(c) sets forth the exceptions to a preferential transfer. For example, a transfer is not a preference to the extent that it was intended by the parties to be, and was in fact, a substantially contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1). Further, a transfer giving a creditor a security interest in property is not a preference to the extent that the security interest secures new value under certain circumstances. 11 U.S.C. § 547(c)(3).

Assume arguendo that the trustee can prove all the technical elements of a preference under § 547(b). In the instant case, in order to withstand the trustee's attack, AUIC must have a valid, perfected lien not otherwise subject to avoidance. If a security interest is not perfected within the ten (10) day "relation back" provisions of sections 547(e)(2) and 547(c)(3) (enabling loan exception), most courts have held that the "contemporaneous exchange" exception in section 547(c)(1) may not save the transfer from attack as a voidable preference. See, e.g., In re Arnett, 731 F.2d 358 (6th Cir. 1984); In re Davis, 734 F.2d 604 (11th Cir.1984). But, see, In re Air Vermont, Inc., 45 B.R. 817 (D.Vt.1984) (court held that security interest which was not in connection with an enabling loan was a contemporaneous exchange for new value although perfected eleven (11) days after the security interest attached). The court finds from a totality of the particular facts and circumstances that AUIC's liens were properly perfected under applicable law.

■ As to valuable consideration, or new value, the proof shows that AUIC and MPA entered into an independent contract, separate from the contract between MPA and Litton. AUIC and MPA, at the time of the transaction, intended a contemporaneous exchange with new value given to MPA as contemplated by 11 U.S.C. § 547(c)(1), which excepts this transfer as a voidable preference. AUIC issued a surety bond to secure MPA's promissory note to Litton in exchange for a security interest in all MPA's property, and for a mortgage on certain real property owned by MPA in Sioux Falls, South Dakota. Upon issuance of the surety bond by AUIC, Litton executed the bill of sale for the assets of the Microwave Cooking Products Division to MPA constituting a substantially contemporaneous exchange with new value being given to MPA.

■ The trustee has asserted that no new value was given by AUIC to MPA. Payments do not need to be made directly to MPA by AUIC to constitute new value. See, e.g., In re Compton Corp., 831 F.2d 586 (5th Cir.1987). A tripartite relationship may satisfy the elements of 11 U.S.C. § 547(c)(1). AUIC cites In re Matter of Fuel Oil Supply & Terminaling, 837 F.2d 224, 227 (5th Cir.1988), for the proposition that new value received by the debtor need not be provided by the creditor to whom the transfer was made, but may be provided by a fully secured third party. In the instant case, AUIC contends that the new value was the surety bond issued by AUIC, which made possible the fifteen million dollar ($15,000,000.00) loan advanced by Litton. This court is similarly persuaded. The Third Circuit in Reigle v. Mahajan (In re Kumar Bavishi & Associates), 906 F.2d 942 (3rd Cir.1990) held that executing a personal guarantee to a lending institution to enable a debtor to obtain additional credit that it would not otherwise have been accorded qualifies as providing "new value" to the debtor. On the other hand, the trustee cites In re Bellanca Aircraft Corp., 56 B.R. 339 (Bankr.D.Minn.1985), wherein the court found that giving a guaranty does not necessarily constitute new value, but upon performing the guaranty, the guarantor gives new value for the benefit of the debtor. However, to take this latter point in isolation is to misconstrue the ultimate holding in Bellanca. The Bellanca court emphasized that the guaranty "alone" does not satisfy § 547(a)(2), which would logically conclude that under some foreseeable circumstances a guaranty would constitute new value. In In re Hart Ski Mfg. Co., Inc., 7 B.R. 465 (Bankr.D. Minn.1980), the court held that there was no preference in a transaction where a

creditor guaranteed letters of credit issued upon application of debtor and collateralized the guaranties under a financing agreement between creditor and debtor, since the transfer was not for or on account of an antecedent debt, but was substantially contemporaneous exchange, purchase financed by the letters of credit was in the ordinary course of debtor's business, and letters of credit and guaranties were issued according to ordinary business terms.

■■■ With respect to the contemporaneous nature of the transfer, the trustee argues that because of a lapse of time of several days, there was no contemporaneous exchange. Lapse of time does not, per se and ipso facto, divest a transaction of its contemporaneous character for purposes of exception to preferential transfer statutes. *See*, e.g., *In re Gaildeen Industries, Inc.*, 71 B.R. 759 (9th Cir. BAP 1987). The *Gaildeen Industries, Inc.* court opined that while a three (3) week period between receipt of consideration and the creditor getting cash might warrant scrutiny, it may still be contemporaneous and within the ordinary course of business. *Id.* at 766. Citing *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). In the instant case, the transfer took place on August 16, 1988, and AUIC filed its financing statement with respect to the South Dakota property on August 19, 1988, and September 2, 1988, on the Tennessee property. Therefore, there was no appreciable lapse of time.

As mentioned earlier, in order to find a preferential transfer, each of the elements of 11 U.S.C. § 547(b) must be satisfied, and none of the exceptions must be met. In the instant case, the trustee makes a valiant effort, but the court finds that the AUIC had a valid, properly perfected security interest in conjunction with a contemporaneous transfer for new value. Thus, AUIC's claim may not be avoided as a preference, even assuming all the elements of § 547(b) exist. 11 U.S.C. § 547(c)(1).

## III

Query, should AUIC's claim be disallowed pursuant to 11 U.S.C. § 502(e)(1)(A) & (B)?

11 U.S.C. § 502(e)(1)(A) & (B) state in toto as follows:

### § 502. Allowance of claims or interests.

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as to the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

■■■ It has been said that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety. 11 U.S.C. § 502(e)(1)(C). A surety has no right to share in the distribution of the debtor's assets until such time as the creditor's claim has been paid in full. Until payment is made, the surety's claim is contingent. Accordingly, section 502(e)(1)(B) disallows a contingent claim of the surety for reimbursement or contribution. Such a claim is, on the other hand, allowed as a prepetition claim at the time it becomes fixed after the commencement of the case, i.e., when the creditor's claim against the debtor is paid by the surety or co-debtor. Section 502(e)(1)(C) disallows a claim of a surety or co-debtor to the extent that the surety or co-debtor asserts a right of subrogation to the rights of such creditor under section 509. See also Bankruptcy Rule 3005. Thus, the surety or co-debtor is given a choice. To the extent his claim for contribution would be advantageous to him, e.g., when the contribution or reimbursement claim is secured by assets of the debtor, the surety may opt for reimbursement or contribution by way of a claim

allowable under section 502(e) for, as is plain, such claims are allowable save to the extent that sections 502(e)(1)(A), (B), (C) make them disallowable. Accordingly, the court finds under a totality of the particular facts and circumstances, that since AUIC has not paid on the bond, AUIC's secured claim is a contingent one for purposes of treatment under the plan.

■ The court has previously determined that AUIC has a valid perfected secured lien, not subject to avoidance under § 547(b). The allowability of a secured claim normally hinges on three things:

1) the validity of the underlying debt;
2) the validity of the lien; and
3) the value of the collateral.

The first two must be satisfied before reaching the value of the collateral. Bankruptcy Rule 7001(2). A secured claim is allowable only to the extent of the value of the collateral which secures it. 11 U.S.C. § 506(a). As noted, the court has previously determined that AUIC has a valid lien. The underlying debt, however, is a disputed issue.[7]

In any event, AUIC can have no higher status and no higher value than the primary creditor, Litton. Valuation regarding the South Dakota property [8] has been previously determined.

## STANDARD OF VALUATION

■ Finally, as to the standard of valuation to be applied, the court heard testimony on the liquidation value and the going concern value. For confirmation purposes, the appropriate standard of valuation in a reorganization case is generally the going concern value. *See, e.g., In re Tenney Village Co., Inc.,* 104 B.R. 562 (Bankr.D.N. H.1989). AUIC claims a security interest in pre- and post-petition property relying on language from a cash collateral order as follows:

"To the extent that Litton and AUIC have valid, perfected, unavoidable pre-petition security interests in any of the property to be utilized by the Debtor pursuant to this order, but only to the extent said property is so utilized, they are granted a security interest in post petition property of the Debtor of a similar nature as the pre-petition property in which they claim a security interest as well as all pre and post petition property of the Debtor and the proceeds thereof to the extent presently unencumbered. Nothing herein shall be construed as an improvement of the value of Litton's or AUIC's security or security interests as of the date of filing the petition." [9]

11 U.S.C. § 506(a) provides as follows:

**§ 506. Determination of secured status.**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ Thus, AUIC is secured to the extent of the value of the collateral in which it has a security interest. The Raven Bros. appraisal assigns a value to the collateral, which this court finds persuasive.[10]

---

7. AUIC is engaged in litigation in another court over its liability to Litton Industries on its guarantee. AUIC is only entitled to share in distribution of MPA's estate if it pays on the bond.

8. See, court's order dated July 6, 1990.

9. See, cash collateral order dated November 10, 1988.

10. The parties stipulated to the nature assigned in the appraisal, which valuation is incorporated in this opinion by reference.

CONCLUSIONS

Based on all the foregoing, the court finds that AUIC has a valid properly perfected security interest in the South Dakota property; that AUIC is secured to the extent of the value of the collateral and unsecured as to the balance of the claim; that inasmuch as AUIC's lien is properly perfected, it may not be avoided as a preferential transfer; and further that since AUIC has not paid on the bond, AUIC's claim is a contingent one for purposes of allowance at this time and treatment under the plan.

Accordingly, IT IS SO ORDERED.